36 A.3d 1

COMMONWEALTH of Pennsylvania, Appellee

v.

Shawn WALKER, Appellant.

Supreme Court of Pennsylvania.

Submitted Aug. 13, 2007.

Decided Nov. 30, 2011.

602

604

James H. Moreno, Defender Association of Philadelphia, Philadelphia, Shawn Nolan, Billy Horatio Nolas, Philadelphia, for Shawn Walker.

Hugh J. Burns, Jr., Philadelphia District Attorney's Office, Philadelphia, Amy Zapp, Harrisburg, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice EAKIN.

Shawn Walker appeals from the order dismissing his claim for guilt phase relief in the form of a new trial, pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–9546. We affirm.

On April 23, 1991, appellant forcibly entered the home of his former girlfriend, Lisa Johnson, shot and killed a man sleeping on the couch, and shot and permanently disabled Ms. Johnson. The man sleeping on the couch was Ricardo Thomas, a friend of Ms. Johnson's, who offered to spend the night at her home; Ms. Johnson was fearful because appellant had struck her in the face earlier that day when she refused to have sex with him, and then he harassed her by phone all evening, demanding to speak with her new boyfriend, Tracy "Denzell" Brown. When Mr. Brown left Ms. Johnson's home in the middle of the night, he noticed a car parked around the block, later identified as appellant's car. After waiting in his car for about an hour, appellant broke into Ms. Johnson's home and shot her and Mr. Thomas.

Appellant then took numerous pills and admitted himself to the hospital for stomach pain. After appellant was treated and about to be discharged, police spoke with him, told him they wanted to question him regarding the shooting, and asked him if he would come to headquarters, emphasizing that he was not required to come with them. Appellant agreed to go with the officers, and was transported to the station without handcuffs. At the station, after waiving his rights, appellant confessed he had broken in and shot the victims,

neither of whom were armed;[1] however, at trial, he claimed self-defense, testifying that when he entered Ms. Johnson's home, "her and some guy was on the couch, they was hugged up." N.T. Trial, 3/2/92, at 29. Appellant claimed that as he turned to leave, the man got up, punched him, and reached for a gun in his waistband, so appellant reached for his own gun and shot him in self-defense. According to appellant, the police fabricated the portions of his statement that were contradicted by his trial testimony. *Id.*, at 41–44.

The jury convicted appellant of first degree murder. At the penalty phase, the jury found two aggravating factors: in the commission of the offense appellant knowingly created a grave risk of death to another person in addition to the victim, 42 Pa.C.S. § 9711(d)(7); and appellant committed the killing while perpetrating the felony of criminal trespass, *id.*, § 9711(d)(6). The sole mitigating circumstance the jury found was that appellant was under the influence of extreme mental or emotional disturbance, *id.*, § 9711(e)(2).[2] Finding the aggravating circumstances outweighed the mitigating circumstance, the jury sentenced appellant to death.

Appellant received new counsel and filed a direct appeal, claiming, *inter alia*, the killing constituted, at most, voluntary manslaughter because he killed the victim in the heat of passion; the verdict was against the weight of the evidence because the Commonwealth failed to prove appellant possessed malice or specific intent to kill because the killing resulted from his mistaken belief he was defending himself; and trial counsel was ineffective for failing to object to evidence of appellant's prior bad acts. This Court affirmed, finding appellant's claims meritless, *Commonwealth v. Walker,*

1. Appellant's pre-trial motion to suppress this statement on grounds that he lacked capacity to waive his rights was denied. *See* N.T. Suppression Hearing, 2/24/92, at 26.

2. Trial counsel presented evidence in support of the following additional mitigating circumstances: appellant's age (20 years old) at the time of the offense, 42 Pa.C.S. § 9711(e)(4); and appellant had no significant history of prior criminal convictions, *id.*, § 9711(e)(1). The jury did not find these were established by a preponderance of the evidence. *See id.*, § 9711(c)(1)(iii).

540 Pa. 80, 656 A.2d 90 (1995), and the United States Supreme Court denied certiorari. *Walker v. Pennsylvania,* 516 U.S. 854, 116 S.Ct. 156, 133 L.Ed.2d 100 (1995).

Appellant filed a timely *pro se* PCRA petition and received new counsel, who filed an amended petition, raising numerous claims of trial court error and trial counsel's ineffectiveness. The PCRA court granted a hearing on the sole issue of whether trial counsel was ineffective at the penalty phase for failing to adequately investigate and present specific mitigation evidence. Before the hearings were concluded, however, the presiding judge died, and the petition was reassigned to another judge. After several appointments of new counsel due to appellant's repeated expression of dissatisfaction with each attorney, additional hearings were held. The PCRA court concluded appellant's penalty phase ineffectiveness claim entitled him to relief, and ordered a new penalty phase; the court denied all other relief. Appellant appealed from the denial of his guilt phase claims.[3]

We summarize appellant's issues as follows: (1) whether the Commonwealth violated due process by failing to disclose the victim's criminal record to the defense; (2) whether trial counsel was ineffective for failing to investigate and present evidence which would have supported appellant's account of the incident and countered the Commonwealth's claims;[4] (3) whether the PCRA court should have granted a hearing on appellant's guilt phase claims; and (4) whether the cumulative effect of these errors entitles appellant to a new trial or an evidentiary hearing.

3. The Commonwealth cross-appealed from the grant of penalty phase relief; however, it filed a praecipe to discontinue its appeal, which was granted May 15, 2007.

4. Specifically, appellant cites evidence that: the victim had a criminal history, contrary to the Commonwealth's portrayal of him as a decent, law-abiding citizen; the victim was not sleeping when he was shot; appellant was not "lying in wait" prior to the shooting; appellant did not actually attempt to steal Ms. Johnson's pastor's car, as the Commonwealth's evidence suggested; appellant lacked the requisite mental state for first degree murder; and appellant's mental state at the time of his confession provided an alternate basis for suppressing it, and the confession was the fruit of an unlawful arrest.

■ In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the evidence and is free of legal error. *Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167, 1176 (1999). To be entitled to PCRA relief, appellant must establish, by a preponderance of the evidence, his conviction or sentence resulted from one or more of the enumerated errors in 42 Pa.C.S. § 9543(a)(2), his claims have not been previously litigated or waived, *id.*, § 9543(a)(3), and "the failure to litigate the issue prior to or during trial, during unitary review or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel." *Id.*, § 9543(a)(4). An issue is previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue. . . ." *Id.*, § 9544(a)(2).

Four issues underlying appellant's ineffectiveness claims were raised on direct appeal—specifically, whether appellant's mental state at the time of the killing reduced the crime to voluntary manslaughter, whether appellant had the requisite malice for first degree murder when he mistakenly believed he was defending himself, whether appellant's confession should have been suppressed, and whether trial counsel was ineffective for failing to object to evidence of appellant's prior bad acts.[5] *See Walker*, at 94–100. However, appellant now alleges trial and appellate counsel's ineffectiveness in connection with investigation of additional facts surrounding these issues; therefore, his issues are distinct from those raised on direct appeal and have not been previously litigated. *See Commonwealth v. Collins*, 585 Pa. 45, 888 A.2d 564, 569–70, 573 (2005) (term "issue" as used in §§ 9543(a)(3) and 9544(a)(2) "refers to the discrete legal ground that was forwarded on direct appeal and would have entitled the defendant to relief"; ineffectiveness claims are distinct from claims raised on direct appeal,

5. Appellant's claim regarding prior bad acts on direct appeal was that trial counsel should have requested a mistrial when these acts were mentioned; his current claim is that counsel should have presented evidence rebutting the testimony concerning one of these acts. Therefore, it is not previously litigated.

and must be treated as wholly independent of underlying claim of error).

■ Regarding waiver, at the time of appellant's trial, direct appeal, and PCRA proceedings, he was required to raise claims based on trial counsel's performance at the first opportunity after he had new counsel. *See* 42 Pa.C.S. § 9544(b); *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687, 695 n. 6 (1977).[6] Having failed to do this on direct appeal, when he was represented by new counsel, appellant's claims are waived. However, he may still obtain relief if he can show appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness. *See Commonwealth v. Rush,* 576 Pa. 3, 838 A.2d 651, 656 (2003) (citing *Commonwealth v. McGill,* 574 Pa. 574, 832 A.2d 1014, 1022 (2003) (when court is faced with "layered" ineffectiveness claim, only viable ineffectiveness claim is that related to most recent counsel, appellate counsel)).

■ To preserve a "layered" ineffectiveness claim,

a petitioner must *"plead,* in his PCRA petition," that appellate counsel was ineffective for failing to raise all prior counsel's ineffectiveness. Additionally, a petitioner must *"present* argument on, i.e. develop each prong of the [*Commonwealth v.*] *Pierce* [, 515 Pa. 153, 527 A.2d 973 (1987)] test" as to appellate counsel's deficient representation. "Then, and only then, has the petitioner preserved a layered claim of ineffectiveness for the court to review; then, and only then, can the court proceed to determine whether the petitioner has proved his layered claim."

*Id.,* at 656 (citations and footnote omitted) (emphasis in original); *see also McGill,* at 1021–23.

■ The *"Pierce* test" requires appellant to prove, with respect to appellate counsel's performance, that: (1) the un-

6. *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002), abrogated *Hubbard*'s rule that ineffectiveness claims based on trial counsel's performance must be raised at the first opportunity where a defendant has new counsel, and instead held a defendant "should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Grant,* at 738. Appellant's PCRA proceedings, however, predated *Grant,* and *Hubbard* still applied.

derlying claim of trial counsel's ineffectiveness has arguable merit;[7] (2) appellate counsel had no reasonable basis for failing to pursue the claim; and (3) appellant was prejudiced by appellate counsel's deficient performance. *See McGill*, at 1022–23. Prejudice in the context of ineffective assistance of counsel means there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326, 332 (1999). This "performance and prejudice" test was first enunciated in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and was recognized in *Pierce* as the proper test under the Pennsylvania Constitution. Failure to establish any prong of the test will defeat an ineffectiveness claim. *Commonwealth v. Basemore*, 560 Pa. 258, 744 A.2d 717, 738 n. 23 (2000) (citing *Commonwealth v. Rollins*, 558 Pa. 532, 738 A.2d 435, 441 (1999) (ineffectiveness claim may be denied by showing petitioner's evidence fails to meet any one of test's three prongs)).

In his PCRA petition, appellant pled trial and appellate counsels' ineffectiveness for failing to investigate and present factual evidence supporting his account of the incident and countering the Commonwealth's claims. In his appellate brief, he discusses trial counsel's ineffectiveness and includes a section alleging appellate counsel's ineffectiveness, citing appellate counsel's mistaken belief that, at that time, factual or extra-record arguments were to be litigated in PCRA proceedings. *See* Appellant's Brief, at 35–40.[8] Although appellant presents argument on the first two prongs of his claims of

7. This prong requires appellant to establish each *Pierce* prong with respect to trial counsel's performance, which must be addressed in order to determine whether appellate counsel was ineffective for failing to argue trial counsel's ineffectiveness. *See Rush*, at 656.

8. Appellate counsel testified that because *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 700 (1998) (eliminating relaxed waiver in post-conviction context), was not decided until after appellant's direct appeal, he believed, under the doctrine of "relaxed waiver," these issues would not be waived and could be reviewed when appellant filed a PCRA petition. N.T. PCRA Hearing, 7/24/02, at 19–20, 39, 41–42, 48.

appellate counsel's ineffectiveness, he fails to specify how the result of his direct appeal would have differed had counsel investigated and presented the extra-record facts appellant now cites.

■ Appellant's brief was filed four years after *McGill*. In *Commonwealth v. Dennis*, 597 Pa. 159, 950 A.2d 945 (2008),

> Thus, appellant argues appellate counsel's failure to investigate or research appellant's mental health history, life history, guilt phase defenses, criminal history of the victim, or the related ineffectiveness of trial counsel was the result of his reliance on relaxed waiver. Appellant contends either counsel's reliance on relaxed waiver was unreasonable, or this Court's decision in *Commonwealth v. Ford*, 570 Pa. 378, 809 A.2d 325 (2002), which determined *Albrecht* applied retroactively, renders counsel's inaction unreasonable by operation of law.
>
> This Court did not apply relaxed waiver to capital PCRA appeals until *Commonwealth v. DeHart*, 539 Pa. 5, 650 A.2d 38, 48 (1994), which was decided November 22, 1994. Appellate counsel's brief in the present matter was filed March 14, 1994, and the case was argued October 18, 1994, prior to the decision in *DeHart*. Therefore, counsel cannot reasonably have relied on the established discretionary availability of PCRA relaxed waiver review when he declined to pursue extra-record claims in appellant's direct appeal.
>
> However, prior to *DeHart*, this Court reviewed waived claims in first PCRA petitions if the petitioner could demonstrate "extraordinary circumstances." This exception was derived from the language of the Post Conviction Hearing Act (PCHA), the PCRA's predecessor, which provided an ineffectiveness claim could be raised where the petitioner was "able to prove the existence of other 'extraordinary circumstances' justifying his failure to raise the issue." 19 P.S. § 1180-4(b)(2) (repealed). Under that provision, this Court concluded "[t]he allegation that all counsel below and on prior appeals or P.C.H.A. petitions were ineffective constitutes 'extraordinary circumstances.'" *Commonwealth v. McNeal*, 493 Pa. 395, 426 A.2d 606, 608 n. 2 (1981). *See also Commonwealth v. Nole*, 506 Pa. 432, 485 A.2d 766, 768 (1984) (under *Commonwealth v. Watlington*, 491 Pa. 241, 420 A.2d 431 (1980), to obtain review of any allegation of trial or pre-trial error, PCHA petitioner need only allege all preceding counsel were ineffective in failing to effectively preserve issue for appellate review; such allegation constitutes "extraordinary circumstances" under PCHA); *Commonwealth v. Sullivan*, 472 Pa. 129, 371 A.2d 468, 495 n. 15 (1977).
>
> Thus, appellate counsel in the present case could have believed any extra-record claims he did not raise on direct appeal would be available as PCRA claims of prior counsels' ineffectiveness (including his own), which amounted to "extraordinary circumstances" justifying their review. However, we cannot definitively conclude, based on the record below, that counsel's decision to. forego raising extra-record claims was based on this line of cases and thus was reasonable. Regardless of the reasonableness of appellate counsel's decision, we conclude he was not

where the appellant filed his PCRA petition pre-*McGill* and his appellate brief post-*McGill*, we stated:

> *McGill* ... does not save Appellant from the obligation properly to layer his claims before this Court, or from a failure to plead and prove the ineffectiveness of *trial counsel* sufficiently under *Pierce* to satisfy the arguable merit prong for an ineffectiveness claim against appellate counsel, any of which will be fatal to his claims....

*Id.*, at 956. However, we note the continuing difficulties in the transitional period following *McGill*, as the measures outlined there take hold, slowly and erratically, in the lower courts. Indeed, we are still seeing cases, such as the instant one, where the PCRA filings predated *McGill*, but the appellate brief was filed post-*McGill*. We are also seeing post-*McGill* cases where PCRA courts have failed to allow for amendment, an important safeguard contemplated in the Rules of Criminal Procedure and emphasized in *McGill*. Given the complexities posed by these layered ineffectiveness claims, we now conclude the better practice is not to reject claims of appellate counsel's ineffectiveness on the grounds of inadequate development in the appellate brief if the deficiencies in the brief mirror those in the PCRA pleadings, unless the PCRA court invoked these deficiencies as the basis for its decision and afforded an opportunity to amend. Accordingly, *McGill*'s remand procedure will remain an option in cases such as this one, and we will review the underlying claim concerning trial counsel's stewardship to determine whether remand for further development of the claim pertaining to appellate counsel is required. As held in *McGill* and *Rush*, remand is unnecessary where the appellant has not met his burden of proving the underlying claim of trial counsel's ineffectiveness.

As discussed below, appellant has not demonstrated his entitlement to relief on any of these underlying claims. Since all of appellant's underlying claims of trial counsel's ineffectiveness fail, his claims of appellate counsel's ineffectiveness are necessarily defeated as well, *McGill*, at 1023, and we need

ineffective for failing to raise baseless claims pertaining to trial counsel's stewardship, as discussed *infra*.

not remand for him to develop the prejudice claim with respect to appellate counsel. *See Rush*, at 657–58; *McGill*, at 1026. We now turn to address appellant's claims.

### Due Process/Brady

Appellant first claims the Commonwealth violated his due process rights and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by withholding the victim's criminal history from the defense, then making false, misleading statements to the jury regarding the victim's good character. Appellant argues such evidence would have been helpful to his defense, as it supported his claim that the victim was the aggressor. He contends trial counsel asked the Commonwealth to disclose the victim's criminal history and was told there was none; however, appellant now contends the victim had an extensive criminal history, citing aggravated assault, simple assault, recklessly endangering another person, and terroristic threats charges, as well as outstanding arrest warrants on those charges. In the alternative, appellant contends counsel was ineffective for relying on the Commonwealth's assertion there was no record and thus failing to discover these charges. The PCRA court held this issue was meritless, as the victim's arrest record [9] would have been inadmissible at trial.

Under *Brady*, "a prosecutor has an obligation to disclose all exculpatory information material to the guilt or punishment of an accused, including evidence of an impeachment nature." *Commonwealth v. Spotz*, 18 A.3d 244, 275–76 (Pa.2011) (citation omitted). To establish a *Brady* violation, appellant must demonstrate: the evidence at issue was favorable to him, because it was either exculpatory or could have been used for impeachment; the prosecution either willfully or inadvertently suppressed the evidence; and prejudice ensued. *Id.*, at 276 (citation omitted). "The evidence at issue must have been 'material evidence that deprived the defendant of a fair trial.' ... 'Favorable evidence is material ... if there is a

9. At the time of the shooting, the victim had not been convicted of any of these charges.

reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Id.* (citations omitted).

The PCRA court based its holding on the fact the victim's arrest record would have been inadmissible at trial. This Court is currently reviewing the issue of whether *Brady*'s materiality requirement is satisfied where the undisclosed evidence would not have been admissible at trial. *See Commonwealth v. Willis*, 600 Pa. 499, 968 A.2d 224, 225 (2009) (*per curiam* order). However, we need not address the interplay between admissibility and materiality here, or the propriety of the PCRA court's ruling in this regard, because we conclude appellant has failed to demonstrate the requisite prejudice under *Brady*.

 Viewing all of the evidence presented at trial, we cannot conclude, even if appellant had the purported "benefit" of the victim's arrest record to support his self-defense claim and rebut the Commonwealth's alleged portrayal of the victim as a law-abiding citizen, the outcome of the trial would have differed. There was no question regarding the killer's identity, as appellant confessed to the crimes. There was evidence the front door's lock was broken, and that the victim was asleep at the time of the killing. No gun was found on or around the victim, and there was no evidence of a struggle. There was evidence appellant was lying in wait outside the home before he broke in, and he engaged in a pattern of harassment and threats against the victim. Thus, there was overwhelming evidence that the murder was deliberate and premeditated. Appellant fails to show that, had the victim's arrest record been disclosed to him and admitted at trial, it would have cast enough doubt on the Commonwealth's case to have resulted in a difference outcome in the guilt phase.[10] As

10. The PCRA court also noted the victim's criminal history was a matter of public record and thus available to the defense. *See* PCRA Court Opinion, 6/29/06, at 23–24 n. 6; *see also Spotz*, at 276 ("There is no *Brady* violation when the appellant knew or, with reasonable diligence, could have uncovered the evidence in question...."); *Collins*, at 578 (no due process violation where parties had equal access to information or if defendant could have uncovered such information

appellant has failed to carry his burden of demonstrating he was prejudiced by the Commonwealth's actions, this claim fails, and remand for further development of it is unnecessary.

### Ineffectiveness of Counsel

Appellant next raises five ineffectiveness claims, all relating to trial counsel's failure to investigate and present facts which would have supported appellant's version of the incident, as well as trial counsel's failure to request a jury instruction on voluntary manslaughter. Appellant argues since he admitted to the crime when he was arrested and at trial, the only issue for the jury was whether the shooting was self-defense, voluntary manslaughter, or murder. He claims trial counsel was ineffective for failing to present evidence in support of his claims that he acted in the heat of passion and in self-defense;

with reasonable diligence). However, appellant contends he relied on the Commonwealth's assertions, in response to his specific request for the victim's criminal record, that the victim had no record; he contends counsel is entitled to rely upon affirmative representations by the Commonwealth that are made in response to specific defense requests. *See Banks v. Dretke*, 540 U.S. 668, 693–96, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004) (when defense requests information and prosecution does not provide it, defense cannot be faulted for relying on prosecution and assuming no such evidence exists).

The Commonwealth counters that, after the PCRA hearing, it found a discovery letter to trial counsel, dated January 6, 1992, indicating it in fact provided the victim's criminal history to the defense. The Commonwealth has moved to submit the letter to this Court to correct the record pursuant to Pa.R.A.P. 1926. It also asserts it would not oppose a limited remand to permit the PCRA court to consider the letter, which casts doubt on the accuracy of trial counsel's recollection that it was his impression the prosecutor told him the victim had no record.

However, even if appellant's assertion concerning the Commonwealth's representation is true, he is not entitled to relief because he has failed to show the requisite prejudice under *Brady*. Accordingly, while we do not condone such practices by the Commonwealth, we need not supplement the record with the Commonwealth's proffered letter nor remand to address this factual dispute. Furthermore, regarding appellant's claim that trial counsel was ineffective for relying on the Commonwealth's alleged assertion and thus failing to discover the victim's record, we again note appellant's failure to demonstrate the requisite prejudice under *Brady* precludes relief on his ineffectiveness claim; appellant cannot demonstrate that but for counsel's inaction, the result at trial would have differed. *See Kimball*, at 332.

he further claims appellate counsel was ineffective for failing to raise these issues on direct appeal.

■■■■ Appellant first asserts trial counsel was ineffective for failing to develop and present evidence to rebut the Commonwealth's assertion that the victim was shot while sleeping, which undermined appellant's claims of voluntary manslaughter and self-defense. Appellant points to statements given by Commonwealth witnesses to police, wherein the witnesses noted they found the victim sitting up or kneeling on the couch, and indicated the victim threatened appellant shortly before the shooting; he claims trial counsel should have impeached these witnesses at trial with their prior inconsistent statements to police. Appellant further claims trial counsel should have presented expert testimony that the victim's toxicology report showed he ingested cocaine just prior to his death, demonstrating appellant's description of the victim's threatening behavior was consistent with aggressive behavior caused by cocaine use. Appellant also contends trial counsel made statements during closing which conceded the crime was murder because the victim was shot in his sleep.

Viewed in context, the witnesses' statements in the police reports concerning the position of the victim when he was found would have been of little help to appellant's defense. Numerous other witnesses, including Ms. Johnson, three police officers, and a crime scene unit employee, testified the victim was lying on the couch; one officer noted he was in a "semi-fetal position." *See* N.T. Trial, 2/26/92, at 52; N.T. Trial, 2/27/92, at 117, 136, 148; N.T. Trial, 2/28/92, at 50–52. The medical examiner, who was shown photographs of the victim's body lying on the couch, testified that based on the trajectory and entrance wounds, the victim was in the position depicted in the photograph when he was shot. *See id.*, at 84–85. Thus, one witness's statement that the victim was "kneeling" [11] actually corroborated the officer's testimony; two other witnesses' statements that the victim was "sitting" [12] were

11. *See* Police Interview of Leon McKnight, 4/23/91, at 5.

12. *See* Police Interview of Gladys McKnight, 4/23/91, at 3; Police Interview of Sharon Butler, 4/24/91, at 2. Although Gladys McKnight

insignificant in light of the other overwhelming testimony to the contrary.[13]

█ Appellant's claim concerning the toxicology report showing cocaine metabolites in the victim's blood is similarly unavailing. At trial, the medical examiner estimated the cocaine in the victim's blood was ingested approximately a day and a half before his death, *see* N.T. Trial, 2/28/92, at 87; therefore, introducing expert testimony concerning the toxicology report, which neither stated with certainty the time the victim ingested the cocaine nor verified that he experienced its effects, would not have aided appellant's defense.

█ With respect to appellant's claim trial counsel's summation confirmed the Commonwealth's evidence that the victim was shot in his sleep, we note appellant focuses on certain phrases in isolation, interpreting them out of context.[14] Trial counsel's remarks, read as a whole, were a reasonable attempt to discredit the testimony of the only eyewitness and survivor of the shooting, Ms. Johnson, who would have garnered significant sympathy from the jury, given the fact she was in a wheelchair. Counsel attempted to highlight Ms. Johnson's difficulty in remembering specific details of the crime, pointing out her testimony that the victim was shot in his sleep was

used the term "sitting" in her description, she clarified the victim's body was actually in more of a fetal position. *See* Police Interview of Gladys McKnight, 4/23/91, at 3.

13. Likewise, the police statement by Tracy Brown, Ms. Johnson's boyfriend, that Ms. Johnson told him appellant and the victim "had threatened to kill each other," Police Interview of Tracy Brown, 4/23/91, at 5, and Ms. Johnson's father's police statement that the victim "use[d] to tell [appellant] if he wanted to fight [he] would meet [him,]" Police Interview of Leon McKnight, 4/23/91, at 8, were contrary to appellant's contention that he and the victim had never met or only knew each other peripherally through others; thus, such statements would not have been helpful to the defense.

14. Appellant cites the following remarks: "[Ms. Johnson] says she woke up to [appellant] shooting [the victim], that [the victim] didn't move but was shot down as he slept and in that testimony is *the essence of murder....*" N.T. Trial, 3/3/92, at 24 (emphasis added); "The question arises as to why the door being kicked open didn't wake [the victim], as to whether or not they had consumed alcohol or drugs and *therefore were stuporous* [,]" *id.* (emphasis added); and counsel's asking the jury to consider appellant's actions "after the murder...." *Id.*, at 27–28.

suspect because the noise appellant generated by breaking in would have awakened him. *See* N.T. Trial, 3/3/92, at 23–25. Counsel vigorously singled out the portion of Ms. Johnson's testimony that did not square with appellant's account of the events—that she and the victim slept soundly while appellant broke into the house, shooting them—and offered the jury a reason to reject the Commonwealth's evidence. The fact this tactic was ultimately unsuccessful[15] does not render trial counsel ineffective; therefore, remand is unnecessary for further development of this claim as it pertains to appellate counsel. *See Rush,* at 657–58; *McGill,* at 1026.

Appellant next claims trial counsel was ineffective for failing to develop and present evidence that would have undermined the Commonwealth's assertion appellant was lying in wait before the shooting. Tracy Brown testified he left Ms. Johnson's home around 2:00 a.m. the morning of the murder, and when he circled the block, he saw appellant's car[16] parked nearby. *See* N.T. Trial, 2/27/92, at 82–85. However, in his statement to police, Mr. Brown had not mentioned circling the block, and stated Harry Smith accompanied him when he left Ms. Johnson's home. Appellant argues trial counsel should have impeached Mr. Brown with his police statement, as well as interviewed Mr. Smith to see if his version of events matched Mr. Brown's. Mr. Smith's PCRA hearing testimony refuted Mr. Brown's version of events; Mr. Smith stated they left Ms. Johnson's home at approximately 10:00 p.m. and did not drive around the block. *See* N.T. PCRA Hearing, 7/24/02, at 11. Appellant further contends trial counsel should have interviewed Ms. Johnson's next-door neighbor, Vivian Butler, and had her testify; Ms. Butler's police statement indicated she heard appellant's car go by Ms. Johnson's house, not

15. Also unsuccessful was counsel's attempt to highlight appellant's remorse and concern by mentioning his suicide attempt "after the murder." N.T. Trial, 3/3/92, at 27–28. This inadvertent reference to the shooting as "murder" was just that—inadvertent—and appellant's contention it constituted concession to the crime is specious.

16. Mr. Brown explained he did not recognize the car at the time he saw it, but when he was shown a photograph of it one week before trial, in preparation for his testimony, he recalled seeing it on the night of the murder. *See* N.T. Trial, 2/27/92, at 83–84.

stopping, about 15 minutes before she heard the shots. *See* Police Interview of Vivian Butler, 4/23/91, at 3–4 (stating she recognized sound of appellant's car because it "is loud and he keeps the radio up").

Appellant fails to demonstrate trial counsel's actions were unreasonable or that he was prejudiced by not having Mr. Smith and Ms. Butler testify. During Mr. Brown's cross-examination, trial counsel focused on the fact he did not identify appellant's car until one week before trial, and emphasized Mr. Brown did not see anyone in the car, nor did he see appellant on the evening in question. *See* N.T. Trial, 2/27/92, at 86–88. Since Mr. Brown did not realize the significance of the car until one week prior to trial, the fact he neglected to mention it to the police is inconsequential. Likewise, the testimony of a neighbor who was inside her home the entire time in question and simply heard a car go by would have been of dubious value. Mr. Smith's version of the events on the night of the shooting was inconsistent with appellant's self-defense claim. Appellant testified he went to Ms. Johnson's home around 11:30 p.m., after three men (one of whom was Mr. Smith) telephoned him from the home, *see* N.T. Trial, 3/2/92, at 27; Mr. Smith's purported testimony was that he and Mr. Brown left the house at 10 p.m., and the victim had not yet arrived. *See* N.T. PCRA Hearing, 7/24/02, at 11. Thus, Mr. Smith's testimony was inconsistent with appellant's version of events. Furthermore, although Mr. Smith testified at the PCRA hearing, appellant did not question trial counsel regarding why he did not pursue this purported witness. Accordingly, appellant has failed to demonstrate he was prejudiced by trial counsel's failure to rebut the Commonwealth's assertion he was lying in wait, and there is no need to remand for development of this claim concerning appellate counsel. *See Rush,* at 657–58; *McGill,* at 1026.

 Appellant next claims trial counsel was ineffective in connection with certain evidence of prior bad acts. He first faults trial counsel for failing to investigate the veracity of the Commonwealth's assertion that appellant tried to steal the minister's car at Ms. Johnson's grandmother's funeral. *See*

N.T. Trial, 2/27/92, at 109–10; N.T. Trial, 3/3/92, at 41. The Commonwealth introduced this evidence to show appellant's pattern of behavior with Ms. Johnson and her family, as part of the events leading up to the murder. *See* Pa.R.E. 404(b)(2); *Commonwealth v. Lark,* 518 Pa. 290, 543 A.2d 491, 497 (1988) (evidence of prior bad act admissible where act was part of sequence of events forming history of case and part of its natural development). Appellant contends the minister dispelled this allegation in an interview with PCRA counsel, and had trial counsel conducted a reasonable investigation, he could have presented this "helpful evidence" to the jury. Appellant's Brief, at 49.

Appellant fails to demonstrate that, even if trial counsel should be held accountable for failing to present evidence rebutting the Commonwealth's assertion concerning the attempted theft of the minister's car, the lack of this evidence prejudiced him. On direct appeal, we addressed appellant's related claim that trial counsel should have requested a mistrial when the attempted theft was mentioned; we noted trial counsel objected to this evidence, and when the objection was overruled, requested a cautionary instruction. *See Walker,* at 99. The trial court instructed the jury the only purpose of the testimony about the car incident was to show a pattern of activity by appellant relating to Ms. Johnson and her family; the court told the jury not to conclude appellant was a bad person or committed any other crimes. *Id.* We concluded the instruction adequately reflected the law, and the jury was presumed to have followed the court's instruction. *Id.* (citing *Commonwealth v. Tilley,* 528 Pa. 125, 595 A.2d 575, 583 (1991)). Thus, we cannot now conclude appellant suffered prejudice as a result of the admission of this evidence.[17]

17. To the extent appellant's claim concerning the minister's denial of the incident falls under the appellation of after-discovered evidence or failure to call a witness, it likewise fails. *See Commonwealth v. Randolph,* 582 Pa. 576, 873 A.2d 1277, 1283 (2005) (criteria for relief on after-discovered evidence claim); *Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831, 856 (2003) (criteria for relief on claim of ineffectiveness for failure to call witness). Appellant offers nothing other than his bald assertion that the minister would have testified on his behalf at

 Appellant further faults trial counsel for not objecting to testimony by Ms. Johnson's sister that he "went to jail" from November, 1990 to February, 1991, *see* N.T. Trial, 2/27/92, at 6–7, and for compounding this error by eliciting testimony from a police officer that he seized a "[p]arole [d]epartment paper" with appellant's name on it from appellant's car. *See* N.T. Trial, 3/2/92, at 12.

As the PCRA court noted, the reference to appellant's previous incarceration was passing in nature, inadvertently related to establishing a time-line of his romantic involvement with Ms. Johnson; thus, it was not elicited to illustrate bad character, and the prosecutor did not attempt to exploit this comment. *See* PCRA Court Opinion, 6/29/06, at 14. Likewise, the reference to the parole paper in appellant's car was brief and harmless, introduced to show his connection with the car parked on Ms. Johnson's street the night of the murder. Thus, appellant fails to show these comments prejudiced him. As these claims regarding trial counsel's ineffectiveness fail, remand for further development of them with respect to appellate counsel is unnecessary. *See Rush,* at 657–58; *McGill,* at 1026.

 Appellant next argues trial counsel's lack of preparation for the penalty phase in failing to investigate mental health evidence also affected the guilt phase; had counsel conducted a reasonable investigation, he could have presented viable defenses regarding appellant's mental state at the time of the crime, which would have reduced the degree of homicide to voluntary manslaughter. Appellant further claims counsel should have requested jury instructions on "heat of passion" voluntary manslaughter, 18 Pa.C.S. § 2503(a), and "imperfect self-defense" voluntary manslaughter, *id.,* § 2503(b).

Specifically, appellant argues counsel knew or should have known that at the time of the incident, appellant believed the victim was going to harm him, appellant was upset over Ms. Johnson being with another man, and appellant tried to kill

trial, and as discussed *supra,* fails to demonstrate the absence of such testimony prejudiced his case.

himself afterwards; given this information, appellant claims, counsel should have pursued a mental health evaluation. Appellant further argues counsel should have realized evidence of his mental state would help explain the discrepancies between his police statement and his trial testimony. Although counsel told the jury the only real question was whether the crime was first degree murder or a lesser degree of homicide, appellant argues counsel should have requested the appropriate instructions which would have enabled the jury to return a verdict of third degree murder or voluntary manslaughter.

With respect to trial counsel's failure to request jury instructions on "heat of passion" and "imperfect self-defense" voluntary manslaughter, we ruled on direct appeal that the evidence presented at trial demonstrated appellant possessed specific intent to kill; he was not acting under sudden, intense passion. *Walker*, at 96. Alternatively, we held even if he was acting under heat of passion when he harassed Ms. Johnson by phone on the evening of the murder, there was sufficient time for cooling off when appellant waited in his car for an extended period of time before the killing. *Id.* We also concluded there was no evidence supporting appellant's claim of self-defense; therefore, we rejected his claim that the verdict was against the weight of the evidence because the killing implicated imperfect self-defense voluntary manslaughter. *Id.,* at 97. In light of these prior holdings, appellant cannot succeed on his claim that trial counsel should have requested a jury charge on heat of passion and imperfect self-defense voluntary manslaughter; the evidence presented did not warrant such instructions. *See Commonwealth v. Washington,* 547 Pa. 563, 692 A.2d 1024, 1028–29 (1997) (jury instructions regarding particular defense not warranted where evidence does not support such instruction).

Thus, appellant's argument evolves into an attack on trial counsel's stewardship for not presenting evidence that would have supported a finding of heat of passion or imperfect self-defense voluntary manslaughter. Appellant claims counsel should have investigated and presented additional evidence of appellant's state of mind on the night of the killing. Although

trial counsel testified at the PCRA hearing that he should have obtained a mental health evaluation of appellant prior to the guilt phase, he also admitted appellant "seemed disinclined" to do so, so he dropped the issue; counsel's impression was "that if I did ask an expert to see him that he would not cooperate." N.T. PCRA Hearing, 12/4/03, at 60–61. Counsel conceded that, in his experience as a criminal defense attorney, he did not see a defense of diminished capacity such as would necessitate expert testimony; the defense was that appellant was acting out of a jealous rage at the time of the crime—a defense laypeople could appreciate without the aid of an expert. *See id.,* at 65.

In light of our prior holding on direct appeal that there was enough cooling off time to negate any finding that appellant acted in the heat of passion, we cannot conclude that the result at trial would have been different had counsel presented evidence concerning appellant's state of mind. Furthermore, regarding imperfect self-defense, it is extremely improbable that expert opinion testimony would have made this claim any more plausible, given the facts surrounding the killing. Appellant's conduct and supporting testimony did not support either defense; therefore, although trial counsel admittedly could have conducted more investigation in preparing appellant's defense at the guilt phase, appellant has failed to show the outcome of the trial would have differed had counsel done so. Accordingly, appellant's claim of trial counsel's ineffectiveness fails, and remand for further development of this claim concerning appellate counsel is unnecessary. *See Rush,* at 657–58; *McGill,* at 1026.

Appellant next claims trial counsel was ineffective for failing to argue alternative grounds for suppressing appellant's statement to police, and after suppression was denied, failing to investigate and present evidence undermining the Commonwealth's use of the statement at trial. At the suppression hearing, the prosecutor argued appellant voluntarily accompanied police to the station, where he gave his statement; therefore, he was not arrested or in custody when he

made the statement. At trial, the prosecutor impeached appellant's testimony with the statement, showing inconsistencies between appellant's version of the incident in the statement and at trial. Appellant claims counsel should have pursued the issue of whether he was in custody; he argues had counsel investigated the records from the hospital where he was treated for his suicide attempt immediately following the shooting, counsel would have discovered he was actually in custody.[18]

Appellant's attempt to revisit the issue of whether his confession should have been suppressed is "a futile exercise in pedantry." PCRA Court Opinion, 6/29/06, at 27. The few notations in the hospital report which refer to appellant being in "custody" are not determinative of the custody issue; the real question is whether appellant was free to leave, and the record reflects he was, and he knew of this fact. *See Walker*, at 97 ("After being informed by the police that he was not required to accompany the officers, appellant freely agreed to do so. Appellant was then taken, without handcuffs, to the homicide unit...."). Appellant, who "never showed any signs of being under any sort of mind altering substance during his interview[,]" *id.*, at 98, was given *Miranda*[19] warnings and waived his rights before offering his confession. The finding that appellant was properly advised of his rights and voluntarily waived them precludes appellant's claim that counsel should have pursued the alternate issue of custody.

Appellant further argues counsel should have had him undergo a mental health evaluation; this, he claims, would have demonstrated his mental deficits likely caused the inconsistencies between his prior statement and his trial testimony.

18. *See* Appellant's Brief, at 54 (quoting Commonwealth's Exhibit 2, Medical College of Pennsylvania Records Psychiatric Emergency Service Data Summary Sheet, 4/23/91, at 3) ("[Patient] was ... released into custody of Detective Sergeant Descher...."); *id.*, at 6 ("Released into custody of homicide detective ..."); *id.*, at 9 ("Discharged to police custody ..."). The hospital records also state, however, that "[Patient] went with police voluntarily, [according] to them." *Id.*, at 6.

19. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Appellant relies on the affidavits of two physicians, who opined his psychological and cognitive difficulties adversely affected his information processing ability, memory, self-expression, and reasoning, and that these impairments were intensified under stress, thus explaining why his police statement did not align with his trial testimony. *See* Appellant's Brief, at 17–18 (quoting Affidavit of Dr. Robert Fox, 9/24/96, at 6, ¶ 16; Affidavit of Dr. Patricia Fleming, 8/17/96, at 6 ¶ 14).

Appellant fails to demonstrate that, had trial counsel used this evidence to explain the inconsistencies between his confession and his trial testimony, the result at trial would have differed. Even if trial counsel had produced an expert to persuade the jury that appellant's mental deficits caused the discrepancies between his prior police statement and his trial testimony, there was overwhelming evidence the killing occurred in a premeditated, deliberate manner. Thus, offering an expert opinion to attempt to diminish the impact of appellant's inconsistent statement would have had limited value. As appellant has failed to demonstrate he was prejudiced by trial counsel's actions, remand for development of this claim concerning appellate counsel is unnecessary. *See Rush,* at 657–58; *McGill,* at 1026.

### Denial of Guilt Phase Claims Without Evidentiary Hearing

Appellant next claims the PCRA court erred in denying relief on his guilt phase claims without a hearing; he specifically challenges certain portions of the PCRA court's reasoning in disposing of these claims. A PCRA petitioner is not entitled to an evidentiary hearing as a matter of right, but only where the petition presents genuine issues of material fact. Pa.R.Crim.P. 909(B)(2); *Commonwealth v. Harris,* 578 Pa. 377, 852 A.2d 1168, 1180 (2004). A PCRA court's decision denying a claim without a hearing may only be reversed upon a finding of an abuse of discretion. *Id.*

Appellant devotes most of his argument to reiterating his challenges to the PCRA court's rulings on his guilt phase ineffectiveness claims. As determined above, a review of the evidence of record reveals none of these claims entitle him to

relief; no further purpose would have been served by a hearing. *See* Pa.R.Crim.P. 909(B)(2). Appellant also argues the PCRA judge, who was assigned the case after the initially assigned judge died, erroneously deferred to the first judge's ruling that a hearing was only appropriate on one of appellant's ineffectiveness claims—the issue of trial counsel's ineffectiveness for failing to present mental health mitigating evidence at the penalty phase. Appellant suggests the first judge's ruling, which granted a hearing on one ineffectiveness claim, did not specifically deny a hearing on the other issues; therefore, he asserts, the issue of whether a hearing was required on his remaining claims was still pending before the second PCRA judge. Appellant's argument is specious; in granting a hearing on one claim, the first judge obviously considered whether a hearing was appropriate on all claims; finding only one claim where there were issues of material fact, he granted a hearing on that claim alone. The judge's failure to specify a hearing was denied on appellant's remaining claims, coupled with the judge's death before the proceedings were concluded, does not give appellant a second bite at the apple; the second judge appropriately resumed the hearings on the penalty phase claim, then issued the final order granting a new penalty phase and denying relief without a hearing on appellant's other claims. As we perceive no abuse of the PCRA court's discretion, this claim affords appellant no relief.

### Cumulative Effect of Alleged Errors

Finally, appellant contends the cumulative prejudicial effect of the above alleged errors entitles him to relief. However, we conclude that, even cumulating the claims which we have rejected on grounds of insufficient proof of prejudice, appellant is not entitled to relief. *See Commonwealth v. Johnson,* 600 Pa. 329, 966 A.2d 523, 532 (2009). Accordingly, this claim fails.

As appellant has failed to establish that any of his claims entitle him to a new guilt phase, we affirm the PCRA court's order.

Order affirmed; jurisdiction relinquished.

Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE, Justices BAER, TODD, and McCAFFERY join the opinion.

Chief Justice CASTILLE files a concurring opinion.

Justice SAYLOR files a dissenting opinion.

Chief Justice CASTILLE, concurring.

I join the Majority Opinion and write only to expand upon the point introduced by the Majority Opinion and two points discussed by Mr. Justice Saylor's Dissenting Opinion related to the ineffectiveness of appellate counsel in the post-*McGill*[1] era.[2]

## A

*McGill* addressed a specific, recurring issue: the proper approach to layered claims of ineffective assistance of counsel given the substantive Sixth Amendment requirements of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As noted by Justice Saylor, *McGill* was a compromise decision in hopes of resolving the controversy surrounding the proper presentation of claims of counsel ineffectiveness in circumstances where there was intervening counsel on direct appeal. However, as pointed out by the

---

1. *Commonwealth v. McGill*, 574 Pa. 574, 832 A.2d 1014 (2003).

2. Although this appeal involves an initial Post Conviction Relief Act petition, 42 Pa.C.S. § 9541–9546, and thus the case has not yet proceeded to federal court, appellant is represented by 4 federal lawyers from the Federal Community Defender Office ("FCDO"), who managed to involve themselves in this state capital matter, supplanting state-appointed counsel. Lead counsel, Billy H. Nolas, Esquire, requested and received nearly five months' worth of briefing extensions, due to a variety of reasons, but including his heavy capital caseload in this and other courts. In addition to the question of the propriety of these unauthorized federal forays into state court, there is a question of the delays created by the FCDO's self-appointment (or "volunteering"). If its caseload is too burdensome for the FCDO to discharge their briefing duties, perhaps the FCDO should return to the actual practice of law which has been authorized by Congress, instead of pursuing its extra-Congressional agenda in state court.

Majority Opinion, the road in the post-*McGill* era has been anything but smooth. In light of the continuing difficulties revealing themselves in the transitional period, I agree with the Majority's ultimate *McGill*-based approach to the layered *Strickland* claims here: *i.e.*, passing through to the underlying claims concerning the performance of trial counsel.[3]

Furthermore, and respectfully, I do not share Justice Saylor's concern with the difficulty of assessing whether the deficiencies in the appellate brief "mirror" the deficiencies in the PCRA petition pleadings. I view the Majority's statement in this context to simply mean that if the PCRA pleadings did not comply with the "layering" contemplated by *McGill*, but the PCRA court neither permitted amendment[4] nor dismissed the claim(s) on these grounds, when similar "layering" defects appear in the appellate brief an appellate court should not dismiss the "layered" claims based on those defects.[5]

### B

The second point raised by the Dissenting Opinion concerns the professional obligations of direct appeal counsel, in PCRA cases implicating layered ineffectiveness where appeal counsel's performance is at issue. Those obligations are important in layered cases because the scope of counsel's duty on direct appeal can shape or narrow the availability of PCRA review and relief.

3. Ultimately, the complexities posed by cases involving "layered" claims of counsel ineffectiveness should disappear as *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), which channels direct appeal ineffectiveness claims to collateral review, takes fuller effect. But, until that time, the *McGill* framework should be available when the concerns that powered the decision are present.

4. I refer to amendment only in the "layered" claim context in order to comply with the pleading requirements inherent in layered *Strickland* claims as noted in *McGill*. *McGill* contemplated that there would be a transitional period during which petitioners would be given the opportunity under Pa.R.Crim.P. 905 to conform their pleadings to the *McGill* paradigm.

5. *Accord Commonwealth v. Paddy*, 15 A.3d 431, 474–77 (Pa.2011) (Castille, C.J., concurring).

Justice Saylor questions whether the Majority's discussion of the "extraordinary circumstances" exception to waiver permits an attorney to rely on his own incompetence in violation of this Court's case law prohibiting the same. *See* Dissenting Op. at 637–38, 36 A.3d at 23–24.

The Majority notes direct appeal counsel's PCRA testimony that he did not investigate extra-record claims based upon the belief that such issues were reviewable on collateral attack, and that the capital relaxed waiver doctrine played a role in his determination not to pursue such claims.[6] The Majority further explains that the relaxed waiver doctrine was not abrogated on PCRA review until *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693 (1998), which was decided after appellant's direct appeal. The Majority states that counsel's belief that extra-record arguments were to be reserved for PCRA review was "mistaken." The Majority then explicates that PCRA relaxed waiver review was not recognized and established in the collateral review context at the time counsel prepared his direct appeal brief. Thus, the Majority correctly concludes that direct appeal counsel could not reasonably have relied on the established availability of relaxed waiver when he declined to pursue extra-record claims on direct appeal, since that was not the law "back then."

Nevertheless, as the Majority sets forth, this Court did review waived claims in first petitions for collateral relief if the petitioner could demonstrate "extraordinary circumstances." And, extraordinary circumstances included an allegation that all counsel below and on prior appeals or PCHA[7] petitions

6. Direct appeal counsel repeatedly stated that at the time he filed the post-trial motions and direct appeal in this case he believed extra-record claims were for post-conviction proceedings. N.T., 7/24/2002, at 20–23, 28, 38–39, 40–41. On direct and redirect examination, counsel was asked whether he relied on relaxed waiver in formulating this opinion. He first responded, "I think so" and later responded, "that was the law back then." *Id.* at 19, 41. Notwithstanding this testimony, counsel acknowledged that he raised one extra-record claim relating to the failure to call character witnesses. Counsel noted that the claim was prompted by appellant, who supplied him with the relevant information.

7. Post Conviction Hearing Act, 42 Pa.C.S. §§ 9541–9551 (repealed), the predecessor to PCRA.

were ineffective. *Commonwealth v. Griffin*, 537 Pa. 447, 644 A.2d 1167, 1170 (1994).

Expanding upon the Majority's observation, one of the pressures underlying the *Griffin* line of cases was this Court's prior directive in *Commonweatlh v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977) that all claims of trial counsel ineffectiveness were **required** to be raised for the first time on direct appeal, if new counsel had entered the case, upon pain of waiver.[8] *Griffin* and related cases ameliorated the effect of *Hubbard*, and claims of trial counsel ineffectiveness which were defaulted by new counsel on direct appeal were subject to revival by a showing of "extraordinary circumstances," such as the ineffectiveness of prior counsel. Thus, it appears the *Griffin* line of cases developed, in part, as a response to the *Hubbard* requirement.

Given this state of the law in 1994, counsel preparing a direct appeal brief in a capital case at that time (or a non-capital case, for that matter) could have believed that any *Strickland* claims he waived under *Hubbard* would have been available as PCRA claims of prior counsel ineffectiveness (including his own), which amounted to "extraordinary circumstances" justifying their review. Moreover, as a practical matter, the Court at that time seemed to view global allegations of ineffectiveness (what we later came to describe as "layered ineffectiveness") essentially as pleading mechanisms that opened the door to consideration of the underlying trial

8. Justice Saylor examined the development of pre-*Hubbard* case law at some length in his dissenting statement in *Commonwealth v. Ly*, 605 Pa. 261, 989 A.2d 2 (2010) (*per curiam* order denying request for reargument). Therein, he noted that before *Hubbard*, there appeared to be some flexibility in the requirement that claims of prior counsel ineffectiveness must be raised at the time new counsel entered the case, including an exception when "the grounds upon which the claim of ineffective assistance are based do not appear in the trial record." *See Ly*, 989 A.2d at 3 (Saylor, J., dissenting) (*quoting Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435, 438 (1975)). Regardless of whether *Hubbard* intended to make such an inflexible pronouncement, or whether it squared with *Dancer*, the fact remains that subsequent case law interpreted the *Hubbard* rule as being inflexible, *see Ly*, 989 A.2d at 3–4, and this was the legal landscape governing the professional duties of appellate practitioners on the criminal defense side.

level ineffectiveness claim, rather than holding petitioners to the independent showing required by *Strickland*. Thus, a lawyer fully in tune with the complexity of the law at the time might have felt secure that his direct appeal defaults would not make the claims more difficult to establish.

In this case, I do not know if direct appeal counsel's erroneous reference to relaxed waiver intended to account for the actual legal landscape in 1994, or if it was filtered, by the time of the PCRA hearing many years later, through subsequent experience with the relaxed waiver rule. Given these difficulties, I offer no ultimate view on whether counsel's assessment in 1994, whatever its basis, was "reasonable." However, given the actual legal landscape facing direct appeal counsel at that time, I also cannot flatly conclude that counsel's explanation was unreasonable.

Instead, these pre-*Grant* cases involving new counsel on direct appeal obviously will be fact-driven, and proper assessment will depend upon specific proffers and testimony from direct appeal counsel. Competing values are at play. On the one hand, *Hubbard* and its progeny made clear that new counsel was obliged to raise ineffectiveness claims concerning prior counsel at the earliest opportunity; lawyers routinely raised such claims, including extra-record claims, on direct appeal; and the claims were reached and decided. *See Commonwealth v. Ly*, 602 Pa. 268, 980 A.2d 61, 101–02 (2009) (Castille, C.J., joined by Eakin, J., concurring) (collecting cases). Thus, there unquestionably was both a duty and an **opportunity** to raise claims of trial counsel ineffectiveness— both record-based and extra-record—on direct appeal. Indeed, direct appeal counsel in this matter raised an extra-record claim on direct appeal. On the other hand, as our decision in *Grant* recognized, there were practical impediments to pursuing and developing certain extra-record claims given the constraints of the appellate process; and, there is some competing basis in law, under the *Griffin* line and, later under relaxed waiver, to support an assessment by direct appeal counsel that a direct appeal default of a trial level ineffectiveness claim would not result in the underlying claim

escaping collateral review, or being made any more difficult to establish.

I discussed some of the relevant implications in this area in my concurrence in *Ly*. In that PCRA appeal, the capital appellant deliberately decided not to "layer" a claim of ineffectiveness related to the investigation and presentation of mitigating evidence at the penalty phase. The appellant argued that the underlying claim concerning trial counsel was not "record-based," and therefore, appellate counsel could not pursue the claim due to lack of funds and resources. I agreed with the Majority's rejection of this broad theory and further noted that there was nothing in this Court's prior case law suggesting that "direct appeal counsel 'could not' pursue non-record claims, or could not be faulted for failing to pursue obvious and meritorious non-record claims." *Id.* at 101. At the same time, I recognized that concerns with the difficulty in pursuing extra-record claims on direct appeal were part of the impetus for *Grant*'s overruling of *Hubbard*. *Id.* I also suggested that the fact that a claim is extra-record could be relevant in assessing appellate counsel's performance:

> The fact that a claim is partially or wholly extra-record may well be relevant to an assessment of appellate counsel's performance and to the prospect for relief, but it does not alter the fact that such claims were available before *Grant*, and counsel could be held to answer for unreasonable and prejudicial defaults under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

*Id.* at 102.

I continue to believe that the sort of *per se* and generic argument respecting non-record claims that was forwarded in the *Ly* case—*i.e.*, that extra-record claims of ineffectiveness implicating trial counsel are raisable as of right, without having to account for appeal counsel—is not persuasive. As I noted in my concurrence in *Ly*:

> [I]t defies logic that a defense counsel would deliberately fail to raise a claim on direct appeal, thereby guilefully manipulating the appellate process, in "reliance" on the

prospect of delayed, collateral review premised upon a discretionary doctrine [relaxed waiver]. And, most importantly, there has been no proffer or proof that appellant in fact "relied" upon the doctrine in defaulting claims on direct appeal; indeed, it is highly unlikely that any defense counsel could with any candor forward such a claim.

980 A.2d at 99–100. In further explication, I adverted to this Court's abrogation of relaxed waiver on direct appeal in *Commonwealth v. Freeman*, 573 Pa. 532, 827 A.2d 385 (2003), noting that the abrogation had been made prospective only, so as to protect actual reliance interests involving direct appeals already briefed: "*Freeman*'s concern for parties' 'reliance' on relaxed waiver was limited to those who had actually 'relied' upon the doctrine when briefing claims to this Court." *Ly*, 980 A.2d at 100.

The Court's further experience in these cases reveals that my prediction of what might be deemed logical may have been mistaken; which calls to mind the wisdom in Justice Holmes' observation that, "[t]he life of the law has not been logic: it has been experience." OLIVER WENDELL HOLMES, JR., THE COMMON LAW 1 (1881). I accept that there may be cases where direct appeal counsel, in good faith, in fact relied upon some combination of relaxed waiver practice, the *Griffin* line of cases, or the very availability of the PCRA review process as a reason not to pursue extra-record claims. And, it may be that, in the right circumstances, counsel's decision reflects a reasonable interpretation of the law at the time the direct appeal was litigated.[9] As the U.S. Supreme Court has recently reiterated, counsel is entitled to make reasonable decisions based on the law at the time, which balances limited resources in accord with effective tactics and strategies. *See*

9. I recognize that this Court previously has considered a case involving testimony from direct appeal counsel that he conducted no extra-record investigation in the belief that his role was confined to review of the existing record and presentation of record-based claims. *Commonwealth v. Gibson*, 597 Pa. 402, 951 A.2d 1110, 1118 (2008). We noted that counsel's understanding was inconsistent with prevailing law under *Hubbard*. *Id.* at 1118 n. 5. The scenario I discuss in text, obviously, is different from the one posed in *Gibson*.

*Harrington v. Richter,* —— U.S. ——, 131 S.Ct. 770, 779, 178 L.Ed.2d 624 (2011).

With specific regard to the concerns of Justice Saylor, my own considered view is this. In a PCRA matter where the record reveals that new counsel on a direct appeal in the *Hubbard* era indeed made a conscious, deliberate and reasonable decision not to pursue extra-record claims, the proper response would not be to dismiss a subsequent, "layered" claim of ineffectiveness on grounds that appeal counsel acted reasonably; instead, we should give effect to the very reasonableness of the decision by passing through to the underlying claim of trial counsel ineffectiveness. In short, I would not deem such claims to be subject to "layering." I believe this course squares with the terms of the PCRA itself, at least when those terms are considered in light of the burden imposed by *Hubbard.*

Section 9544(b) provides that an issue is waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544(b). Where direct appeal counsel credibly testifies that he relied on extant case law and reasonably concluded that extra-record claims of trial counsel ineffectiveness would be available on collateral review, I would not view *Hubbard* as triggering the waiver provision of § 9544(b), and thus secondarily triggering the necessity to "layer" the claim.[10]

10. The General Assembly's clear intent in the PCRA was to channel all collateral claims involving the criminal judgment into a single statutory review process. *See* 42 Pa.C.S. § 9542. Furthermore, ineffectiveness claims are specifically deemed cognizable. *See* 42 Pa.C.S. § 9543(a)(2)(ii). As explained more fully in *Grant,* perpetuation of the *Hubbard* rule is inconsistent with the General Assembly's intention of creating an avenue for the presentation of ineffectiveness claims on collateral review. We addressed the tension in *Grant,* and relieved appellants of compliance with *Hubbard* on direct appeal. Much of our corrective case law has been directed at ensuring that the PCRA functions as the General Assembly intended, which included reserving review of ineffectiveness claims to the collateral review phase. I view the collateral review approach I have described in text as properly balancing the directives of the PCRA, the role of our governing cases at the relevant time, what is required to prove an ineffectiveness claim

In this case, the Majority ultimately passes through the appeal counsel aspect of appellant's layered claims and assesses the underlying merits of the claims of trial counsel ineffectiveness, and properly rejects them on those merits. Accordingly, I join the Majority Opinion.

Justice SAYLOR, dissenting.

I respectfully dissent, as I am unable to join material aspects of the majority reasoning, as follows.

Initially, I find myself in a difficult position relative to the latest turn in the Court's layering jurisprudence reflected in the following pronouncement by the majority: "[W]e now conclude the better practice is not to reject claims of appellate counsel's ineffectiveness on the grounds of inadequate development in the appellate brief if the deficiencies in the brief mirror those in the PCRA pleadings, unless the PCRA court invoked these deficiencies as the basis for its decision and afforded an opportunity to amend." Majority Opinion, at 612–14, 36 A.3d at 8–9.

I have always been a proponent of a fair degree of leeway in terms of the application of the waiver doctrine to both pleadings and briefs. *See, e.g., Commonwealth v. Rivers,* 567 Pa. 239, 266–70, 786 A.2d 923, 939–42 (2001) (Saylor, J., dissenting). But the intractable differences among Justices aired before and throughout my tenure had resulted in many sharply divided opinions, of which *Rivers* is a prime example. Thus, I participated in the compromise decision in *Commonwealth v. McGill,* 574 Pa. 574, 832 A.2d 1014 (2003), in anticipation that the controversy would be resolved. Even still, I favored some latitude, after *McGill,* to allow practitioners some time to adjust to its specific mandates. *See, e.g., Commonwealth v. Gwynn,* 596 Pa. 398, 421, 943 A.2d 940, 954 (2008) (Saylor, J., concurring). As of 2008, however, I was committed to fair enforcement of *McGill. See id.*

Nevertheless, in apparent *dictum,* the majority now takes the opportunity to announce, rather cryptically, that *McGill*

under *Strickland,* and the experience-based complications uncovered in the crucible of the actual collateral litigation of cases involving direct appeals litigated in the *Hubbard* era.

will not be enforced consistently, at least where there are "mirror" deficiencies in the appellate pleadings and the post-conviction pleadings. Majority Opinion, at 635, 36 A.3d at 22. It is difficult, however, to understand exactly what the majority intends in this comparison of briefs and pleadings. The requirements for briefs and pleadings are different both in terms of focus and degree of development (in light of the differing purposes briefs and pleadings serve). Moreover, the majority does not apply its newly coined approach in any concrete fashion. In the circumstances, and at this juncture in the very long, running dialogue on the subject of layering, I can say only that if a majority of the Court now intends to allow greater leeway in favor of affording merits review—and therefore is adjusting the *McGill* compromise—I will support this effort.

Next, I have difficulty with the majority's discussion of the "extraordinary circumstances" exception to waiver. *See id.* at 632 n. 8, 36 A.3d at 8 n. 8. According to the majority:

> [A]ppellate counsel in the present case could have believed any extra-record claims he did not raise on direct appeal would be available as PCRA claims of prior counsels' ineffectiveness (including his own), which amounted to "extraordinary circumstances" justifying their review.

*Id.* Further, the majority indicates that, if, factually, counsel's thought process subsumed such reliance on his own deficient stewardship, it was reasonable. *See id.*

This Court, however, has otherwise prohibited attorneys from relying upon their own ineffectiveness. *See, e.g., Commonwealth v. Gardner*, 480 Pa. 7, 10, 389 A.2d 58, 59 (1978). It seems particularly unreasonable for an appellate lawyer to defer claims to post-conviction review in reliance on his own incompetence. Thus, I cannot support the majority's discussion on this topic.

Finally, I recognize that the record in this case presents very substantial obstacles in the way of Appellant's effort to secure post-conviction relief, as all of his defenses are weakened by his perpetration of an armed, nocturnal home inva-

sion;[1] the substantial inconsistencies between his statement to police in the aftermath of the killing and his trial testimony; and his admitted shooting of one unarmed victim, at the very least. Nevertheless, in post-conviction cases raising apparent questions concerning the degree of trial counsel's preparation,[2] I believe the matter is best decided on a developed record. It would therefore have been my strong preference, here as elsewhere, for the PCRA court to have conducted a fuller hearing, rather than sharply limiting the evidentiary presentation to penalty matters. I maintain that appropriate factual findings and legal conclusions by a post-conviction court, based on a developed record, could mitigate some of the differences yielding divided opinions upon this Court's review in the capital arena.

1. Appellant testified at trial that he was invited into the apartment; however, the weight of the other testimony and physical evidence, including photographs of the broken door and doorframe, militated strongly to the contrary.

2. In the present case, such questions arise from counsel's now-established lack of preparation relative to at least one phase of Appellant's trial, as well as his failure to even request an instruction which would have enabled the jurors to consider one of the defenses he attempted to present.