J-S07031-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| SEQUOYAH NATIVE HAWKINS, | : | |
| | : | |
| Appellant | : | No. 1186 MDA 2016 |

Appeal from the PCRA Order July 14, 2016
in the Court of Common Pleas of Lancaster County,
Criminal Division, No(s):  CP-36-CR-0000235-2010

BEFORE:  BOWES, LAZARUS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:　　　　　　　　**FILED MARCH 23, 2017**

Sequoyah Native Hawkins ("Hawkins") appeals from the Order denying his Petition filed pursuant to the Post Conviction Relief Act ("PCRA").  **See** 42 Pa.C.S.A. §§ 9541-9546.　　Additionally, Hawkins's appointed counsel, Christopher P. Lyden, Esquire ("Attorney Lyden"), has filed a Petition to Withdraw as counsel, and an accompanying brief.[1]　　We grant Attorney Lyden's Petition to Withdraw and affirm the PCRA court's Order.

In its Opinion, the PCRA court set forth the relevant factual and procedural history, which we adopt for the purpose of this appeal.  **See**

---

[1] Attorney Lyden's appellate brief appears to be in the nature of a brief filed pursuant to **Anders v. California**, 386 U.S. 738 (1967), which applies when counsel seeks to withdraw from representation on direct appeal.  When, as in this case, counsel seeks to withdraw from representation on collateral appeal, the dictates of **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*), are applicable.  However, because an **Anders** brief provides greater protection to a defendant, this Court may accept an **Anders** brief in lieu of a **Turner**/**Finley** "no-merit" letter.  **See Commonwealth v. Reed**, 107 A.3d 137, 139 n.5 (Pa. Super. 2014).

PCRA Court Opinion, 7/14/16, at 1-4; *see also id.* at 4-7 (wherein the PCRA court summarized the testimony provided by Hawkins and his trial counsel during the evidentiary hearing).

On July 14, 2016, the PCRA court denied Hawkins's Petition. Hawkins, through counsel, filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal. On December 5, 2016, Attorney Lyden filed a Petition to Withdraw as counsel.

In the *Turner*/*Finley* brief, Attorney Lyden presents the following issues for our review:

> I. Did the PCRA court err by failing to find that trial counsel provided ineffective assistance by failing to adequately prepare [Hawkins] to testify at trial?
>
> II. Did the PCRA court err by failing to find trial counsel provided ineffective assistance by failing to seek limited admissibility of portions of [Hawkins's] testimony?

*Turner*/*Finley* Brief at 4. Hawkins did not file a separate *pro se* brief, nor did he retain alternate counsel for this appeal.[2]

Before addressing Hawkins's claims, we must determine whether Attorney Lyden complied with the requirements of *Turner*/*Finley* in petitioning to withdraw as counsel. Pursuant to *Turner*/*Finley*, independent review of the record by competent counsel is required before withdrawal on collateral appeal is permitted. *Commonwealth v. Pitts*, 981 A.2d 875, 876 n.1 (Pa. 2009). Such independent review requires proof of

---

[2] The Commonwealth did not file a brief on appeal.

1) A "no-merit" letter by PCRA counsel detailing the nature and extent of his review;

2) The "no-merit" letter by PCRA counsel listing each issue the petitioner wished to have reviewed;

3) The PCRA counsel's "explanation", in the "no-merit" letter, of why the petitioner's issues were meritless;

4) The [] court conducting its own independent review of the record; and

5) The [] court agreeing with counsel that the petition was meritless.

*Id.* (citation and brackets omitted).

Here, Attorney Lyden indicated that he conscientiously reviewed the record, identified the issues that Hawkins seeks to raise, and explained why the issues lack merit. In addition, Attorney Lyden sent Hawkins copies of the *Turner*/*Finley* brief and Petition to Withdraw, and advised him of his rights in lieu of representation in the event that the court granted Attorney Lyden permission to withdraw, in compliance with *Commonwealth v. Widgins*, 29 A.3d 816, 818 (Pa. Super. 2011). Thus, we conclude that Attorney Lyden has substantially complied with the requirements necessary to withdraw as counsel. *See Commonwealth v. Karanicolas*, 836 A.2d 940, 947 (Pa. Super. 2003) (holding that substantial compliance with the requirements to withdraw as counsel will satisfy the *Turner*/*Finley* criteria). We now independently review Hawkins's claims to ascertain whether they entitle him to relief.

> We review an order [denying] a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

We will consider Hawkins's claims together. In his first claim, Hawkins asserts that his trial counsel was ineffective for adducing testimony from him at trial, which ultimately provided a basis for the admission of a video depicting Hawkins performing a rap song with violent lyrics. *Turner*/*Finley* Brief at 9. Hawkins claims that his trial counsel did not explain that Hawkins's testimony regarding his own non-violent nature would provide a basis for the admission of the rap video at trial. *Id.* at 10. In his second claim, Hawkins argues that his trial counsel did not explain that his testimony regarding the victim's violent nature and gang association would provide a basis for the admission of the rap video at trial. *Id.* Further, Hawkins contends that, had he understood the consequences, he would have avoided providing such testimony to prevent the admission of the rap video. *Id.*

In its Opinion, the PCRA court set forth the relevant law, addressed Hawkins's claims, and concluded that they lack merit. *See* PCRA Court Opinion, 7/14/16, at 8-14. We adopt the sound reasoning of the PCRA court for the purpose of this appeal. *See id.*

Our independent review of the record indicates that there are no other claims of arguable merit. **_See Pitts_**, 981 A.2d at 876 n.1. Accordingly, we grant Attorney Lyden's Petition to Withdraw and affirm the Order denying Hawkins's Petition.

Petition to Withdraw as counsel granted; Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/23/2017

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | |
| v. | : | No. 0235-2010 |
| SEQUOYAH NATIVE HAWKINS | : | |

**OPINION**

BY: WRIGHT, J.                                        July 14th, 2016

Before the Court are Defendant Sequoyah Native Hawkins' *pro se* "Motion for

Post-Conviction Collateral Relief," his counseled "Amended Motion for Post-Conviction

Collateral Relief," and his "Supplemental Petition for Relief Pursuant to the Post

Conviction Relief Act" as well as the Commonwealth's Reply Brief. Defendant contends

that his trial counsel failed to adequately prepare him to testify at trial and failed to seek

limited admissibility of portions of his testimony. For the reasons that follow, Defendant's

claims are denied.

**BACKGROUND**

On August 24, 2009, Crishon Gray, Rafiq VanHook, and Thomas Wiley

encountered Defendant's girlfriend, Martine Ferber, while the three of them were

walking towards Buchanan Park in Lancaster City, Lancaster County. (N.T. Jury Trial

Vol. 3 at 500:22-501.5; N.T. Jury Trial, Vol. 5 at 857:2-6.) When VanHook tried to speak

with Ferber, she rebuffed him, telling him that she already had a boyfriend. (N.T. Jury

Trial Vol. 3 at 500:22-501:7, 501:6-503:4; N.T. Jury Trial Vol. 5 at 857:2-6, 857:2-

862:13.) Defendant then approached the group, told Ferber to "keep walking" and

confronted Gray, VanHook and Wiley. (N.T. Jury Trial Vol. 5 at 862:15-863:7.) Immediately after shaking Gray's hand, Defendant grabbed VanHook from behind and punched him. (N.T. Jury Trial Vol. 3 at 503:7-504:5.) The two briefly fought. (Id. at 504:6-505:4.) Once the fight had ended, Defendant crossed the street and was joined by Ferber. (Id. at 504:23-505:6; N.T. Jury Trial Vol. 5 at 863:9-865:10.)

Shortly thereafter, VanHook approached Defendant and told Defendant "[i]t's okay, it's not that serious," and put his arm around Defendant. (N.T. Jury Trial Vol. 3 at 505:5-506:23; N.T. Jury Trial, Vol. 5 at 898:18-900:3.) While Defendant and VanHook were talking, Gray walked over and punched Defendant. (N.T. Jury Trial Vol. 3 at 507:4-14.) In response, Defendant reached into one of his waist pockets, pulled out an already-opened knife, and stabbed Gray in the neck. (N.T. Jury Trial Vol. 5 at 907:2-910:2.) Gray later died from the knife wound.[1] (Id. at 816:12-24.) Immediately after knifing Gray, Defendant ran down Nevin Street and fled to Harrisburg, Pennsylvania and Columbus, Ohio. (Id. at 910:16-18, 912:10-22, 913:11-15.) Defendant was eventually arrested on November 10, 2009 in Upper Darby Township, Pennsylvania. (N.T. Jury Trial Vol. 4 at 745:13-746:11.)

Defendant was charged with Criminal Homicide.[2] On March 8, 2012, after a three-day jury trial, Defendant was convicted of Voluntary Manslaughter.[3] (See N.T. Jury Trial Vol. 6 at 1104:16-18.) On May 22, 2012, Defendant was sentenced to 8-20 years of incarceration. (N.T. Sentencing Hr'g. at 24:22-25:1.) On June 1, 2012,

---

[1] The entire episode, from the initial interaction between VanHook and Ferber through the stabbing and Gray's death, was recorded and preserved by cameras of the Lancaster Community Safety Coalition. These videos were shown multiple times during the trial. (See N.T. Jury Trial Vol. 5 at 905:7; N.T. PCRA Hr'g. at 7:14-18, 30:22-31:1.)
[2] 18 Pa.C.S.A. §§ 2501(a).
[3] 18 Pa.C.S.A. §§ 2503(b).

Defendant filed a timely Post-sentence Motion to Modify Sentence, which I denied in my Order dated June 4, 2012. Defendant then timely appealed his judgment of sentence and, on July 20, 2012, submitted a timely Statement of Matters Complained of on Appeal in which he claimed, among other things, that his conviction was against the weight of the evidence and that I erred in allowing a video of Defendant performing a rap song to be admitted into evidence. (See generally Statement of Matters Complained of on Appeal.) The Superior Court affirmed in an Opinion issued February 7, 2014.[4] On December 10, 2014, the Pennsylvania Supreme Court denied Defendant's Petition for Allowance of Appeal.[5] On or about June 5, 2015, Defendant submitted a timely *pro se* PCRA Petition. In my June 11, 2015 Order, I appointed Christopher Lyden to represent Defendant during the PCRA proceedings. Defendant submitted a counseled Motion for an Extension of Time on June 22, 2015, which I granted the following day. On August 27, 2015, Defendant submitted a timely counseled "Amended Petition for Relief under the Post-Conviction Relief Act" ("Amended Petition") and the Commonwealth filed a timely response.

After several continuances, a PCRA Hearing was held on March 31, 2016. (See N.T. PCRA Hr'g. at 1.) At the outset, Defendant clarified that the only two issues were those listed in paragraphs 10(a) and 10(b) of his Amended Petition. (Id. at 3:12-13.) Generally, Defendant claimed that Attorney Marinaro "failed to adequately prepare [Defendant] to testify at trial" and "failed to seek limited admissibility of portions of

---

[4] See Commonwealth v. Hawkins, 1184 MDA 2012, 02/07/2014, at 7-11. Among other things, the Superior Court concluded that the "[c]ommonwealth [had] presented sufficient evidence to negate Defendant's claims of self-defense based upon both Hawkins' status as an initial aggressor, and his violation of the duty to retreat." (Id. at 11.)

[5] Defendant initially filed a premature *pro se* PCRA Petition on or about June 11, 2014.

[Defendant]'s testimony." (Amended Petition ¶¶ 10(a)-(b).) Defendant's specific claims are as follows:

> Trial counsel failed to adequately prepare his client to testify at trial. More specifically, trial counsel failed to instruct his client not to express his personal opinion about his non-violent nature. Rendering a personal opinion about a character trait is not admissible at trial. As a result of trial counsel failing to properly prepare his client, [Defendant] testified he was not a violent person. By doing so, pursuant to the doctrine of curative admissibility, the Commonwealth was permitted to admit a video of [Defendant] performing a violent rap song.

> Trial Counsel failed to seek limited admissibility of portions of . [Defendant]'s testimony. [Defendant] testified that he believed the victim and/or his friends were members of a violent gang. Because [Defendant] believed this, he considered their actions and words at the time of [the] incident as extremely threatening. Trial counsel should have admitted said testimony for a limited purpose only. Trial counsel should have offered the testimony only as evidence of [Defendant]'s state of mind—relevant to determining a belief in the necessity of using deadly force and/or to explain why he fled Lancaster City after the incident. The testimony should not have been offered for the truth of the matter asserted—that the victim and/or his friends possessed a propensity for violence. By failing to offer the evidence for the limited purpose of establishing [Defendant]'s state of mind only, the Commonwealth was permitted to admit a video of [Defendant] performing a violent rap song.

(Amended Petition ¶¶ 10(a)-(b).)

Defendant and Defendant's trial counsel, Michael V. Marinaro testified. (Id. at 2.) After recounting the stabbing, asserting that he had acted in self-defense, and stating that he was afraid that the victim or one of his associates would seriously injure or kill him, Defendant testified about Attorney Marinaro's representation. (See id. at 4:4-8:20) (describing stabbing and self-defense claim); (see id. at 8:21-19:16) (describing representation.) Among other things, Defendant testified that he had met with Attorney Marinaro no fewer than several times at least a month before trial and that they had

4

discussed potential defenses, the consequences of Defendant testifying at trial and the contents of Defendant's discovery file, including the DVD of Defendant performing rap songs. (Id. at 9:2-11:5.) Defendant further stated that it was his decision to testify at trial and that he was aware of the content of the rap video well before trial. (Id. at 19:15-17.) Defendant also acknowledged that while Attorney Marinaro did not explicitly inform him that testifying about his own character for peacefulness and the victim's character for violence could open the door to allow the rap video to be admitted into evidence, the two of them did specifically review the possibility that the rap video could be introduced during the trial as well as the negative impact that video could have on Defendant's case because of its violent lyrics. (Id. at 11:9-13:16.)

Attorney Marinaro then confirmed that he had met with Defendant numerous times before trial, asserted that Defendant was extremely involved in preparing his defense and stated that Defendant absolutely wanted to "tell the jury his side of the story," noting that there was absolutely "no question" that Defendant "was going to take the stand." (Id. at 20:3-21:25, 24:21-25, 31:19-32:2.) He added that they "absolutely" discussed mentioning decedent Gray's affiliation with the Bloods gang and believed that he had told Defendant that, if Defendant portrayed Gray as violent while testifying at trial, then Defendant's rap video would almost certainly be admissible. (Id. at 25:1-11, 35:4-11.)

He then described his pre-trial objection and arguments to exclude the video as more prejudicial than probative. (Id. at 32:7-13.) He also said that, once his objection was overruled, he attempted to distance Defendant from the negative connotations of the rap lyrics by explaining to the jury at trial that the lyrics did not reflect Defendant's

character because Defendant merely performed the lyrics as any other musical artist would. (Id. at 32:13, 35:11-36:9.) Attorney Marinaro said that he further attempted to minimize the connection between the rap song lyrics and Defendant by emphasizing that the lyrics were actually written by another individual and that they were a form of art. (Id. at 36:1-12.)

Attorney Marinaro further testified that the defense theory had to mitigate the Commonwealth's portrayal of Defendant's flight from the scene immediately after killing Gray as evidence of consciousness of guilt. (Id. at 25:19-26:7.) He stated that Defendant and he had determined that the most effective way to deal with the fact that Defendant had fled was to portray Gray as a violent Bloods gang member who could kill Defendant or any of Defendant's friends or family at any time if Defendant had stayed in Lancaster County. (Id. at 25:24-26:7.) Attorney Marinaro also stressed that, while he fully believed that Defendant was not guilty of first-degree murder, he also recognized that the Commonwealth had very strong evidence to support such a charge. (Id. at 30:13-20.) He pointed out that the Commonwealth presented video during Defendant's trial that showed, among other things, Defendant with a knife in his pocket in broad daylight, punching VanHook in the face from behind, stabbing decedent Gray and then immediately running away from the scene. (Id. at 30:18-31:1.)

Attorney Marinaro asserted that he could have handled the defense in the manner suggested by Attorney Lyden but did not do so because he agreed with Defendant that emphasizing Gray's propensity for violence as a member of the Bloods offered the best chance to prevent Defendant from being convicted of first-degree murder. (Id. at 27:5-28:24.) In fact, Attorney Marinaro claimed that he believed that

6

Defendant avoided a first-degree murder conviction only because of the emphasis placed on Gray's gang affiliation and violent character. (Id. at 28:24-29:3.)

Before the hearing concluded, I asked Defendant's PCRA counsel to clarify Defendant's PCRA claims in light of the Superior Court's conclusion that Defendant could not assert a plausible perfect self-defense claim because he was the initial aggressor and failed to retreat when he had the opportunity to do so. (Id. at 37:3-38:13.) In particular, I first asked Attorney Lyden if there was any possible way Defendant could plausibly assert perfect self-defense without testifying. (Id. at 37:3-8.) Attorney Lyden responded that there was "no question" Defendant had to testify during his trial to make a viable self-defense claim. (Id. at 37:9-14.) Second, I noted that, based on the Superior Court's conclusion that perfect self-defense was not available, Defendant's conviction for voluntary manslaughter represented the best possible outcome under the circumstances. (Id. at 38:7-10, 38:20-23.) Accordingly, I asked Attorney Lyden to explain what possible difference the rap video could have made in Defendant's case. (Id.) He agreed that Defendant would indeed "ha[ve] a problem" if the Superior Court's position were as I had summarized and requested additional time to brief the issue, which I promptly granted. (Id. at 38:1-39:7.)

On April 13, 2016, Defendant submitted a timely "Supplemental Petition for Relief Pursuant to the Post Conviction Relief Act" in which he reasserted the same two claims for relief and addressed my question by arguing, among other things, that the Superior Court's conclusion did not foreclose his two PCRA claims. (Supplemental Petition for Relief Pursuant to the Post Conviction Relief Act ¶¶ 1, 27-39.) On May 12, 2016, the Commonwealth provided a timely response.

7

## DISCUSSION

This appeal is governed by the Post-Conviction Relief Act ("PCRA"). The PCRA provides for an action by which a defendant convicted of a crime they did not commit or serving an illegal sentence may obtain collateral relief. 42 Pa.C.S.A. § 9542. To be eligible for relief under the PCRA, a defendant must plead and prove all four of the elements of the statute by a preponderance of the evidence. Id. § 9543(a). First, the PCRA Petition must be timely. Here, Defendant's PCRA Motion was timely filed.[6] Second, a defendant must have "been convicted of a crime under the laws of this Commonwealth," and must be imprisoned, on probation, or on parole at the time that relief is requested. Id. § 9543(a)(1)(i-iii). Defendant was convicted on May 22, 2012 and was incarcerated at his assigned SCI when he filed his *pro se* PCRA Petition and Amended PCRA Petition. Accordingly, this element is established. Third, Defendant must show that the issues have not been previously litigated or waived. Id. § 9543(a)-(b).[7] The issues here have not been reviewed by the highest potential appellate court,

---

[6] Judgment of sentence was entered on May 22, 2012. A PCRA Petition must be filed within one year of the date the judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). Judgment becomes final at the conclusion of direct review, or at the expiration of time for seeking the review. Id. §9545(b)(3). Upon Defendant's direct appeal, the Superior Court of Pennsylvania affirmed his judgment of sentence on February 7, 2014. Defendant filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which that Court denied on December 10, 2014. Pursuant to United States Supreme Court Rule 13, Defendant had ninety days from the denial of his petition for allowance of appeal with the Pennsylvania Supreme Court to file a petition for certiorari with the United States Supreme Court. *See* Commonwealth v. Johnson, 803 A.2d 1291, 1294 (Pa. Super. 2002). He did not do so and, as a result, Defendant's sentence became final on March 10, 2015 (ninety days after December 10, 2014). Thus, Defendant had until March 10, 2016 to submit a timely PCRA Petition. Here, Defendant filed his *pro se* PCRA Petition on or about June 11, 2014 and his Amended Petition on August 27, 2015, both well within the one-year filing period. Thus, the PCRA Petition was timely.

[7] "An issue has been previously litigated when the highest appellate court in which the defendant could have had review as a matter of right has ruled on the merits of the issue or the issue has been raised and decided in a proceeding collaterally attacking the conviction or sentence." 42 Pa.C.S.A. § 9544(a) (internal punctuation omitted). An issue is waived "if the defendant could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding." Id. § 9544(b).

8

have not been previously raised or decided in a prior collateral proceeding, and could not have been raised previously by Defendant. Thus, this element is established. Finally, a defendant must prove that his sentence or conviction was the result of one or more errors enumerated in the statute. Id. § 9543(a)(2). Defendant contends that his trial counsel provided ineffective assistance by failing to adequately prepare him to testify at trial and by failing to seek limited admissibility of portions of Defendant's testimony and that, as a result of this ineffective assistance, "the Commonwealth was permitted to admit a video of [Defendant] performing a violent rap song." (Amended Petition ¶¶ 10(a)-(b).) These claims are cognizable under the PCRA. See, e.g., Commonwealth v. Rivera, 108 A.3d 779 (Pa. 2014); Commonwealth v. Charleston, 94 A.3d 1012 (Pa. Super. Ct. 2014) (evaluating ineffective assistance of counsel claim relating to self-defense). I shall evaluate both claims together because the gravamen of Defendant's complaint is that trial counsel's purportedly ineffective assistance resulted in the admission of the rap video. (Amended Petition ¶¶ 10(a)-(b).)

In an ineffectiveness claim, a court presumes that defense counsel provided effective assistance. Commonwealth v. Rollins, 738 A.2d 435, 441 (Pa. 1999); accord Strickland v. Washington, 466 U.S. 668, 689 (1984), Commonwealth v. Reyes-Rodriguez, 111 A.3d 775, 779-80 (Pa. Super. Ct. 2015). To overcome the presumption, a defendant must demonstrate by a preponderance of the evidence that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for the action or inaction; and (3) defendant has been prejudiced by the ineffectiveness of counsel. Reyes-Rodriguez, 111 A.3d 775 at 780. A defendant's claim of ineffectiveness fails if he is unable to prove one or more of the three prongs. Commonwealth v. Reyes, 870 A.2d

9

888, 896-97 (Pa. 2005); accord Commonwealth v. Fears, 86 A.3d 795, 804 (Pa. 2014).

"Failure to establish any prong of the test will defeat an ineffectiveness claim."

Commonwealth v. Walker, 36 A.3d 1, 7 (Pa. 2011) (quoting Commonwealth v.

Basemore, 744 A.2d 717, 738 n.23 (Pa. 2000)); see Commonwealth v. Rollins, 738

A.2d 435, 441 (Pa. 1999).

Defendant asserts that his trial counsel provided ineffective assistance by failing to adequately prepare him to testify at trial and by failing to seek limited admissibility of portions of Defendant's testimony and that, as a result of this ineffective assistance, "the Commonwealth was permitted to admit a video of [Defendant] performing a violent rap song." (Amended Petition ¶¶ 10(a)-(b).) I conclude that Defendant's claims are meritless under the PCRA because they fail all three prongs of the PCRA's ineffective assistance test: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for the action or inaction; and (3) defendant has been prejudiced by the ineffectiveness of counsel. Commonwealth v. Pierce, 527 A.2d 973, 975 (Pa. 1987).

Initially, Defendant must show that the underlying claims are of arguable merit. He cannot. During his PCRA Hearing, Defendant testified that he had acted in self-defense and that he was afraid that the victim or one of his associates would seriously injure or kill him.[8] (N.T. PCRA Hr'g. at 4:4-8:20.) However, the Superior Court's Opinion squarely addressed and directly rejected Defendant's self-defense theory. Commonwealth v. Hawkins, 1184 MDA 2012, 02/07/2014, at 11. Because the entire incident was captured on video and shown to the jury during the trial, the jury did not have to evaluate the credibility or veracity of Defendant's self-defense claims—the

---

[8] As Defendant's PCRA Counsel noted during the PCRA Hearing, Defendant had to testify to assert a viable self-defense claim.

10

recordings spoke for themselves. (See N.T. Jury Trial Vol. 5 at 905:7; N.T. PCRA Hr'g. at 7:14-18, 30:22-31:1.) In other words, the Superior Court opinion affirmed that the video evidence alone negated Defendant's self-defense argument and, accordingly, that the jury's rejection of self-defense was proper. See Commonwealth v. Hawkins, 1184 MDA 2012, 02/07/2014, at 8-11. The surveillance video clearly showed that Defendant was the initial aggressor and violated his duty to retreat. Id. Put differently, the jury watched the video of the killing, rejected Defendant's self-defense theory, and the Superior Court affirmed the same. Simply stated, excluding the rap video would have made absolutely no difference in the instant matter. Thus, the failure to exclude the rap video cannot possibly constitute ineffective assistance. Additionally, because the video of the homicide negated an acquittal based on perfect self-defense, Defendant's voluntary manslaughter conviction represented the best possible outcome for Defendant. (See N.T. PCRA Hr'g. at 37:3-38:24.) Therefore, Defendant's PCRA claims are meritless. Accordingly, they fail the first prong of the PCRA's ineffective assistance test on this basis alone.[9] See Commonwealth v. Pierce, 527 A.2d 973, 975 (Pa. 1987).

Moreover, Attorney Marinaro did not helplessly sit on his hands and concede the rap video's admission. Rather, he vigorously argued to exclude it before and during the trial and, once I overruled his objection to its admission, he discounted its importance and its connection to Defendant. Specifically, he emphasized to the jury that Defendant did not write the lyrics and that those lyrics and Defendant's performance of them were

---

[9] Both Defendant and Attorney Marinaro credibly testified that they had discussed Defendant's decision to testify, the decision to portray the victim as a gang member and violent person, the high probability of the rap video's being admitted as a result, and the negative impact the admission of that video would likely have on Defendant's case. (Id. at 9:2-11:5; 11:9-13:16; 19:15-17) (Defendant's testimony); (Id. at 25:1-11, 35:4-11; 32:7-13; 32:13, 35:11-36:12) (Attorney Marinaro's Testimony.)

11

a form of artistic expression. (Id. at 32:7-13; 32:13, 35:11-36:12.) At the PCRA hearing, Attorney Marinaro provided credible testimony that he agreed with Defendant that the most effective way to address the Commonwealth's emphasis on Defendant's flight as consciousness of guilt was to explain that Defendant fled based on a well-founded fear that Gray's fellow Bloods would avenge his death. (Id. at 25:19-26:7.)

The other two prongs are just as easily satisfied. Turning to prong (2) of the PCRA's ineffective assistance test, counsel will not be deemed ineffective if any reasonable basis exists for his actions. Commonwealth v. Diehl, 61 A.3d 265, 268 (Pa. Super. Ct. 2013) (citing Commonwealth v. Carter, 656 A.2d 463, 465 (Pa. 1995)). Initially, I note that the defense theory had to incorporate the video evidence of the incident, which showed Defendant punching VanHook, stabbing Gray after the argument with VanHook, and then running away from the scene. (Id. at 30:18-31:1.) Thus, Attorney Marinaro certainly had a reasonable basis for supporting Defendant's self-defense theory and decision to testify. (See N.T. PCRA Hr'g. at 4:4-8:20; 20:3-21:25, 24:21-25, 31:19-32:2.) He also had a rational basis for agreeing with Defendant's repeated requests to emphasize the victim's violent character and gang affiliation to bolster Defendant's self-defense claims. (Id. at 25:1-11, 35:4-11.)

Moreover, Defendant and Attorney Marinaro had to explain why Defendant fled to rebut the Commonwealth's use of that flight as consciousness of guilt. (Id. at 25:19-26:7.) Attorney Marinaro's support of Defendant's determination that the most plausible explanation was fear of revenge from the victim's associates required Defendant to show that the fear was substantiated. Indeed, emphasizing the victim's gang membership and violent tendencies was a rational trial strategy to explain why

12

Defendant was afraid of the victim and why he fled immediately after the homicide. (Id. at 25:19-26:7.) Thus, once I overruled Attorney Marinaro's objection to the admission of the rap video, he most certainly had a rational basis for attempting to diminish its importance by stressing to the jury that the video was a form of art and that Defendant was not the author of the violent lyrics. (Id. at 32:7-13; 32:13, 35:11-36:12.)

While with hindsight Attorney Lyden might have conducted the trial differently, Attorney Marinaro's choice of trial strategies was rational and, quite frankly, likely the only reason Defendant avoided a first-degree murder conviction. (Id. at 28:24-29:3.) Finally, as noted above, Attorney Marinaro's failure to exclude the rap video cannot be ineffective assistance when the rap video did not affect the outcome of the trial. Thus, Attorney Marinaro had a reasonable basis, based on the theory of the case, for supporting Defendant's decision to testify and to describe the victim as a violent gang member. Therefore, Defendant's claims also fail the second prong of the PCRA's ineffective assistance test.

Defendant's claims also fail the third prong of the PCRA's ineffective assistance test because he has failed to demonstrate that he suffered prejudice. To establish prejudice under the PCRA, the Defendant must show that "but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." Commonwealth. v. Kimball, 724 A.2d 326, 333 (Pa. 1999). As described above, Attorney Marinaro did not commit any errors in handling Defendant's trial, but, even if he had, his behavior did not "prejudice" Defendant within the meaning of the PCRA. Indeed, the record reflects that Defendant could not possibly have suffered any prejudice whatsoever because his voluntary

13

manslaughter conviction was the best possible outcome he could have received. (See N.T. PCRA Hr'g. at 37:3-38:24.) Furthermore, Defendant has not produced even a scintilla of evidence that the outcome of the proceedings would have been different had the rap video not been admitted. The rap video made absolutely no difference in the outcome of the proceedings. Instead, the surveillance videotape of the entire incident was shown to the jury and they concluded that that video did not support Defendant's self-defense claim. Thus, the rap video could not possibly have affected their decision in a manner that prejudiced Defendant. Therefore, I conclude that Defendant's claims fail the third prong of the PCRA's ineffective assistance test.

## CONCLUSION

For the reasons set forth above, I conclude that Defendant's claims that Attorney Marinaro rendered ineffective assistance are without merit.

Accordingly, I enter the following:

14

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :
:
v. : No. 0235-2010
:
SEQUOYAH NATIVE HAWKINS :

## ORDER

AND NOW, this ___14th___ day of July, 2016, upon consideration of Defendant's *pro se* Petition for Post-Conviction Collateral Relief, Amended Petition for Relief Under the Post-Conviction Relief Act, Supplemental Petition for Relief Pursuant to the Post Conviction Relief Act, the Commonwealth's Response thereto, and a hearing thereon:

IT IS HEREBY ORDERED that said Petition is DENIED for the reasons set forth in the preceding Opinion.

BY THE COURT:

JEFFERY D. WRIGHT
JUDGE

I certify this document to be filed in the Lancaster County Office of the Clerk of the Courts.

Jacquelyn E. Pfursich
Clerk of Courts

Copies to:

James M. Reeder, ADA
Christopher P. Lyden, APD

2016 JUL 14 PM 3: 31
CLERK OF COURTS
LANCASTER COUNTY, PA

15