J-S04002-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER FORMAN | : | |
| | : | |
| Appellant | : | No. 500 EDA 2024 |

Appeal from the PCRA Order Entered January 30, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006295-2014

BEFORE: OLSON, J., STABILE, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY OLSON, J.: **FILED FEBRUARY 5, 2025**

Appellant, Christopher Forman, appeals from the order entered on January 30, 2024, which denied his petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

We previously summarized the facts underlying Appellant's convictions:

On February 10, 2014, at approximately 7:15 [p.m.], the victims, Eliezer Colon and Moraima Alicea, were returning home with their two children when they discovered that [Appellant] and an unidentified male were inside their home. Colon first observed, from his vehicle, that the "upstairs light was on" in the house, and asked Alicea whether she forgot to turn it off; when she said no, he assumed that she was mistaken. As the family tried to enter their home, Alicea noted that she could not unlock the front door. At this point, Colon "realized that somebody was in there" because the deadbolt, which prevented their entry, could only be locked from the inside. He then noticed a crack in the window blind

---

[*] Retired Senior Judge assigned to the Superior Court.

and instructed his family to get back in the car. Once inside the vehicle, Alicea called 911 to report a burglary.

Meanwhile, Colon drove around to the back of the house and spotted a black Ford F-150 pickup truck idling by the back door, with [Appellant] and another male attempting to carry a large, several-hundred-pound gun safe out of the house. Upon seeing the homeowners return, the burglars left the safe and fled the scene separately; the unidentified male escaped on foot while [Appellant] drove away in the pickup truck. With his family still in the vehicle, Colon pursued [Appellant] in a high-speed chase down Roosevelt Boulevard. Eventually, [Appellant] spotted a police vehicle parked ahead of him, made a sudden U-turn down the same lane he was traveling, crashed into the victims' vehicle, continued driving away, lost control of his truck, and crashed into a tree. [Appellant] proceeded to flee on foot, with Colon still in pursuit, before eventually turning to engage Colon. Colon was able to "hold [Appellant] down" until police arrived.

Upon returning home, Colon and Alicea discovered that the house had been ransacked; "[e]verything was out [of] the drawers, [the burglars ate] food out [of their] refrigerator," and the following items were stolen: one fifty-five-inch television, two Sony PlayStations, fifty PlayStation videogames, one iPhone, various pieces of jewelry, and twelve bottles of Cîroc vodka.

Following trial, a jury convicted [Appellant] of [burglary, criminal trespass, criminal conspiracy, and two counts of recklessly endangering another person.[1]] Sentencing was deferred pending a pre-sentence investigation and mental health evaluation. Prior to sentencing, the Commonwealth notified [Appellant] that it was pursuing a mandatory minimum sentence pursuant to Pennsylvania's "second strike" rule. *See* 42 Pa.C.S.A. § 9714 (relating to second and subsequent crimes of violence). [Appellant] stipulated that he had been previously convicted of voluntary manslaughter, a crime of violence under section 9714, but challenged whether the instant conviction for first-degree burglary

---

[1] 18 Pa.C.S.A. §§ 3502(a)(1), 3503(a)(1)(ii), 903, and 2705, respectively.

qualified as a crime of violence as defined under that section. He argued that because Colon and his family were locked out of their home at the time of the burglary, no one was "present" during its commission; therefore, it was not a second or subsequent crime of violence as defined by section 9714. The sentencing court disagreed, explaining to [Appellant] that:

> [T]he Commonwealth has met the requirements under [s]ection 9714. This conviction does qualify as a second strike as it relates to the burglary charge.
>
> Sir, those people came home. It was their house, and when they tried to enter, they were stopped because of you and your cohorts.
>
> . . .
>
> [T]his matter does qualify under the statute . . . based upon the facts that this [c]ourt heard with respect to the [complainants'] attempted reentry [in]to their own home[,] and the response of [Appellant] thereafter, when they went around the back[] and the high speed chase [then] ensued.

The court applied the mandatory minimum "second strike" provision and[, on April 17, 2017, the trial court] sentenced [Appellant] to an aggregate term of incarceration of 15 ½ to 44 years' incarceration.

*Commonwealth v. Forman*, 241 A.3d 467 (Pa. Super. 2020) (non-precedential decision), at **1-2 (footnotes and some citations omitted).

This Court affirmed Appellant's judgment of sentence on October 27, 2020, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on April 13, 2021, and the United States Supreme Court denied Appellant's petition for writ of *certiorari* on October 4, 2021. *Commonwealth v. Forman*, 241 A.3d 467 (Pa. Super. 2020)

(non-precedential decision), *appeal denied*, 252 A.3d 596 (Pa. 2021), certiorari *denied*, 142 S.Ct. 204 (2021).

Appellant filed a timely, *pro se* PCRA petition and the PCRA court appointed counsel to represent Appellant during the proceedings. On April 17, 2022, counsel filed an amended petition on Appellant's behalf and claimed that trial counsel (hereinafter "Trial Counsel") was ineffective because Trial Counsel "improperly advised [Appellant] that the second-strike mandatory minimum [sentence] did not apply to his case." Amended PCRA Petition, 4/17/22, at 4. According to Appellant, had Trial Counsel properly advised him that the second-strike mandatory minimum sentence was applicable to his case, Appellant would have accepted the Commonwealth's plea offer, where the Commonwealth agreed to recommend an aggregate sentence of three-and-one-half to ten years in prison for his convictions. *See id.* at 3-4.

As the PCRA court explained:

> Appellant was provided [a] bifurcated evidentiary hearing[] concerning his PCRA claims on April 25, 2023 and September 19, 2023 because [Trial Counsel] had been unavailable to testify on April 25, 2023. During [Trial Counsel's] September 19, 2023 testimony[, Trial Counsel], an experienced attorney, credibly confirmed that she had discussed the plea offer with Appellant as well as [the] possibility of the mandatory minimum applying if convicted. According to [Trial Counsel], Appellant was told that a mandatory minimum sentence could be imposed if convicted, but he insisted upon proceeding by way of jury trial. The September 19, 2023 record reflected the following exchange:
>
> > [The Commonwealth]: And do you recall discussing this plea offer with [Appellant]?

[Trial Counsel]: Again, I can't remember the number that I tendered to him as the Commonwealth's plea bargain, but we definitely had a lot of conversations about pleading the case out.

[The Commonwealth]: And throughout these conversations that you were having with [Appellant], did you discuss the possible application of a mandatory minimum sentence?

[Trial Counsel]: Yes.

[The Commonwealth]: And what did you advise [Appellant] with respect to the mandatory minimum?

[Trial Counsel]: Well, again, I'm not in front of the file, but I remember it being a subsequent strike case and I, you know, would have told him what the mandatory minimum was. And with all due respect to [the trial court], I would have also told him that he could find himself begging for the mand[atory] if he were to lose at trial.

[The Commonwealth]: Do you recall filing a motion in this case called a motion to bar application of the mandatory minimum sentence?

[Trial Counsel]: Did I do that? I actually don't remember doing that.

[The Commonwealth]: And would you have ever advised [Appellant] that there was no possibility that the mandatory minimum would apply to his case?

[PCRA Court]: That's a convoluted sentence. Did you ever tell him that the mandatory would not be applied?

[Trial Counsel]: No.

[The Commonwealth]: And do you recall if [Appellant] was colloquied by [the trial court] as to the application of a mandatory minimum sentence?

[Trial Counsel]: I remember there being colloquies. I remember the judge -- I only tried a couple cases in front of [the trial court] as juries. I do remember the judge going through the maximum jurisdiction and -- you know, the numbers on the maximum jurisdiction will basically make your blood run cold and were well in excess of the mandatory minimum. I definitely remember that.

[The Commonwealth]: And at the conclusion of your conversations with [Appellant] about the plea offers, what did [Appellant] decide?

[Trial Counsel]: [Appellant] wanted to try his case.

[The Commonwealth]: And it was [Appellant] who ultimately made that decision?

[Trial Counsel]: Yes.

[The Commonwealth]: And he did so after you -- and did he make that decision after you had conversations with him about the mandatory minimum sentence?

[Trial Counsel]: Yes.

[The Commonwealth]: Your Honor, I have nothing further.

[PCRA Court]: [Trial Counsel], would it be fair to say that in addition to the conversation about a plea offer and the mentioning of the potential mandatory minimum sentence, would there have been discussions as to what [the trial court] would have possibly imposed should he be found guilty?

[Trial Counsel]: Yes. Of course. Any case that was assigned to Your Honor's courtroom was taken with a great deal of care and consideration. I have always said that it's a wonderful place to get a very fair trial, but God forbid you lose, it's going to hurt. And I definitely shared those conversations with [Appellant] and every other client that I represented before the [trial] judge. I do want to say that the fear struck in all of us in trying cases before Your Honor was intense. And the older I get and

- 6 -

the more experienced I get, the more I realize the role of trauma in our clients and whether or not [Appellant] was really able to make a clear-headed decision is a very different analysis.

Did I tell him it's a second-strike case? Of course, I did. Did I tell him he was going to get a fair trial, but God forbid he lose? Yes, I absolutely did. . . .

[N.T. PCRA Hearing, 9/19/23, at 6-9].

PCRA Court Opinion, 8/15/24, at 11-13 (emphasis omitted).

The PCRA court denied Appellant's petition on January 30, 2024 and Appellant filed a timely notice of appeal. Appellant numbers three claims on appeal:

1. Whether the [PCRA] court erred in denying [Appellant's petition] . . . without affording him an evidentiary hearing since [Appellant's] conviction and sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place?

2. Whether the [PCRA] court erred in denying [Appellant's petition] . . . without affording him an evidentiary hearing since, under the totality of circumstances, there are genuine issues concerning material facts and legitimate purposes would be served by such hearing?

3. Whether the [PCRA] court erred in denying [Appellant's petition] . . . without affording him an evidentiary hearing since [Appellant's] petition makes out a prima facie case warranting such hearing where under the totality of the circumstances, trial counsel provided ineffective assistance that lacked any reasonable basis which prejudiced [Appellant]?

Appellant's Brief at 6-7.

"We review a ruling by the PCRA court to determine whether it is supported by the record and is free of legal error. Our standard of review of a PCRA court's legal conclusions is *de novo*." ***Commonwealth v. Cousar***, 154 A.3d 287, 296 (Pa. 2017) (citations omitted). However, we afford "great deference" to the PCRA court's credibility determinations. ***Commonwealth v. Flor***, 259 A.3d 891, 910-911 (Pa. 2021). As our Supreme Court has explained:

> We will not disturb the findings of the PCRA court if they are supported by the record, even where the record could support a contrary holding. [An appellate court's] scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party.

***Id.*** (quotation marks and citations omitted).

To be eligible for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from "one or more" of the seven, specifically enumerated circumstances listed in 42 Pa.C.S.A. § 9543(a)(2). One of these statutorily enumerated circumstances is the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

Counsel is presumed to have been effective and "the burden of demonstrating ineffectiveness rests on [A]ppellant." ***Commonwealth v.***

- 8 -

***Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010). To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that:

> (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different.

***Commonwealth v. Fulton***, 830 A.2d 567, 572 (Pa. 2003). As this Court has explained:

> A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. ***See Commonwealth v. Jones***, 876 A.2d 380, 385 (Pa. 2005) ("if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim . . . , he or she will have failed to establish the arguable merit prong related to the claim"). Whether the facts rise to the level of arguable merit is a legal determination.
>
> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.
>
> Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

***Commonwealth v. Stewart***, 84 A.3d 701, 707 (Pa. Super. 2013) (some quotation marks and citations omitted). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." ***Id.***

On appeal, Appellant claims that the PCRA court erred when it: 1) dismissed his PCRA petition without providing him with an evidentiary hearing and 2) failed to grant him relief on his claim that Trial Counsel was ineffective for "improperly advis[ing Appellant] that the second-strike mandatory minimum [sentence] did not apply to his case." ***See*** Appellant's Brief at 22-26; ***see also*** Amended PCRA Petition, 4/17/22, at 4.

First, Appellant claims that the PCRA court erred when it dismissed his petition without providing him with an evidentiary hearing. Appellant's Brief at 22-26. Appellant's claim is belied by the record and frivolous, as the PCRA court plainly held an evidentiary hearing in this case. Indeed, even Appellant admits that he received an evidentiary hearing on his petition. ***See*** Appellant's Brief at 13 ("On April 25, 2023, a video hearing was held with Appellant present. [Trial Counsel] was not available; therefore, the hearing was bifurcated until September 19, 2023").

Second, Appellant claims that Trial Counsel was ineffective for "improperly advis[ing Appellant] that the second-strike mandatory minimum [sentence] did not apply to his case." ***See*** Appellant's Brief at 22-26; ***see also*** Amended PCRA Petition, 4/17/22, at 4. As the PCRA court explained, this claim fails:

> Counsel is presumed effective, and to overcome that presumption, a PCRA petitioner must plead and prove that (1) the legal claim underlying the ineffectiveness claim has arguable merit; (2) counsel's action or inaction lacked any reasonable basis designed to effectuate petitioner's interests; and (3) counsel's action or inaction resulted in prejudice to petitioner. ***Commonwealth v. Mason***, 130 A.3d 601, 618 (Pa. 2015). Failure to establish any prong of this test will defeat an ineffectiveness claim. ***Commonwealth v. Walker***, 36 A.3d 1, 7 (Pa. 2011).
>
> Based on the testimony [at the PCRA hearing, the PCRA court] concluded that [Trial Counsel] ably advised [Appellant] of the second-strike mandatory minimum application to his case and had revisit[ed] the issue with him when it became apparent that [the trial court] would not grant the defense motion to bar application of the mandatory minimum prior to trial. Moreover, [the trial court] colloquied Appellant prior to trial and the [trial] court's notes reflect that the motion to bar the application of the second-strike law had been commensurately denied.

PCRA Court Opinion, 8/15/24, at 14.

The PCRA court's credibility determinations are binding on this Court and its factual finding – that Trial Counsel, in fact, "ably advised [Appellant] of the second-strike mandatory minimum application to his case" – is supported by the record. As such, Appellant's claim on appeal fails.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/05/2025

- 11 -