J-S44044-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KEENAN JONES :
:
Appellant : No. 1244 EDA 2024

Appeal from the PCRA Order Entered September 11, 2023
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0006396-2018

BEFORE: NICHOLS, J., MURRAY, J., and LANE, J.

MEMORANDUM BY LANE, J.: **FILED MARCH 25, 2025**

Keenan Jones ("Jones") appeals *pro se* from the order dismissing his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]

On August 14, 2018, Jones and his sister were standing in a checkout line in a Walmart store in Cheltenham Township, Montgomery County. Kevin Richards ("Richards"), who was waiting to checkout in a nearby lane, noticed that Jones and his sister were arguing. Jones walked towards Richards and asked, "What are you looking at?" N.T., 10/17/19, at 19. Jones then grabbed a handgun tucked into his sister's waistband and fired at Richards, striking him in the right calf.

Akiya Dash ("Dash"), a Walmart customer service manager, walked towards the sound of the gunshot, which she believed to be glass breaking.

_____

[1] *See* 42 Pa.C.S.A §§ 9541-9546.

Dash encountered Jones, who was running towards her and holding a handgun. Jones locked eyes with Dash, raised his gun, and fired multiple shots at her in quick succession. The bullets struck four individuals, including Dash and Tanya Plunkett ("Plunkett"). One of the bullets that struck Dash lacerated an artery in her leg and caused life-threatening bleeding.

Jones fled the store with his sister and discarded the handgun along a highway divider in the roadway. After entering the City of Philadelphia, Jones' vehicle struck an unoccupied police vehicle. Philadelphia police officers arrested Jones after a foot pursuit. During the struggle to arrest Jones, officers sustained a broken wrist, injured jaw, and sprained ankle.

By criminal information filed on November 19, 2018, the Commonwealth charged Jones with numerous offenses, including attempted murder resulting in serious bodily injury.[2] Vanessa L. Bellino, Esquire ("Trial Counsel"), represented Jones during the relevant pretrial proceedings and at trial. The Commonwealth filed a motion for a discovery protective order, regarding the medical records related to the five gunshot victims. The Commonwealth requested, *inter alia*, that Trial Counsel: (1) not make photocopies of the medical records; (2) not show the records to Jones; and (3) return the records thirty days after trial. The Commonwealth noted in its motion that Jones had a prior conviction for felony witness intimidation. The trial court granted the

---

[2] **See** 18 Pa.C.S.A. §§ 901(a), 2502(a).

Commonwealth's motion and entered a protective order pertaining to the medical records.

Prior to trial, Jones filed a notice that he would assert an insanity defense and rely on expert evidence in support of that defense pursuant to Pennsylvania Rule of Criminal Procedure 568(A). *See* Pa.R.Crim.P. 568(A)(1)-(2) (requiring defendant to provide pretrial notice of: (1) defense of insanity or mental infirmity; and (2) expert evidence relating to mental disease, defect, or condition bearing on issue of guilt). Jones later filed an amended notice of insanity defense and expert witness. The notices indicated that Jones intended to present Gerald Cooke, Ph.D. ("Dr. Cooke"), to offer expert evidence as to Jones' mental condition. The Commonwealth filed a reciprocal notice of witnesses pursuant to Rule 568(C), identifying the expert it intended to call at trial, John O'Brien, M.D., J.D. ("Dr. O'Brien"), to disprove Jones' defense. *See* Pa.R.Crim.P. 568(C) (requiring the Commonwealth provide pretrial notice of expert evidence that would disprove or discredit defense of insanity or mental infirmity).

Jones presented an insanity defense at trial and called Dr. Cooke, an expert in forensic psychology. Dr. Cooke had examined Jones and diagnosed him with: (1) borderline intellectual functioning; (2) post-traumatic stress disorder; (3) brief psychotic disorder manifested by delusions, disorganized thought, and disorganized behavior; and (4) other specified personality disorder with paranoid and antisocial traits. *See* N.T., 10/18/19, at 241-42. Dr. Cooke opined that Jones: (1) was grossly psychotic, delusional, and

paranoid at the time of the shooting; (2) believed he was acting in self-defense; and (3) did not understand that his actions were wrong. *See id*. at 242-43. Dr. Cooke further opined that Jones' marijuana usage — his urine tested positive for marijuana, and he told medical personnel that he used marijuana on the date of the incident — could not have caused Jones' psychotic episode. *See id*. at 244-46.

The Commonwealth presented Dr. O'Brien, an expert in forensic psychiatry, as a rebuttal witness. Dr. O'Brien diagnosed Jones as suffering from substance-induced psychotic disorder on the date of the shooting, induced by marijuana use. *See* N.T., 10/21/19, at 38-40, 57-58. Dr. O'Brien opined that Jones understood the nature and quality of his actions during the shooting and appreciated the wrongfulness of his behavior. *See id*. at 56-59. Dr. O'Brien further testified that urine screens, such as the one administered to Jones, commonly do not test for synthetic marijuana products and other abused substances. *See id*. at 28-30, 83-85.

Trial Counsel presented Dr. Cooke as a sur-rebuttal witness, who testified, *inter alia*, that the persistence of Jones' psychotic symptoms was inconsistent with a substance-induced psychotic disorder, which would normally resolve after the individual stopped using the substance. *See id*. at 97-98. Trial Counsel then attempted to call Dr. Gary Lage ("Dr. Lage"), who was present in the courtroom during Dr. O'Brien's testimony, as a sur-rebuttal expert witness. Trial Counsel stated she would offer Dr. Lage, a forensic toxicologist, for "limited testimony" regarding "when psychosis would be

caused by simple marijuana and . . . testing for synthetic marijuana." *Id*. at 116.

The Commonwealth objected based on lack of notice, citing Rules 568 and 573. *See* Pa.R.Crim.P. 573(C)(1)(a) (requiring pretrial production of results or reports of mental examinations prepared by defense witnesses). The trial court sustained the Commonwealth's objection and precluded Dr. Lage's testimony.

The jury found Jones guilty of attempted murder, fourteen counts of aggravated assault, twenty counts of recklessly endangering another person, and one count each of resisting arrest, possessing an instrument of crime, person not to possess a firearm, and possession of firearm without a license. With respect to the attempted murder count, the jury found that Dash suffered serious bodily injury resulting from Jones' conduct. The trial court imposed an aggregate sentence of twenty-five to sixty-two years' imprisonment. The sentence included a term of sixteen to forty years' imprisonment for attempted murder, in accordance with 18 Pa.C.S.A. § 1102(c), which provides for an enhanced maximum sentence of forty years where serious bodily injury results to the victim.

Jones filed a notice of appeal, and this Court affirmed his judgment of sentence. *See Commonwealth v. Jones*, 258 A.3d 489 (Pa. Super. 2021) (unpublished memorandum), *appeal denied*, 268 A.3d 386 (Pa. 2021). Jones filed a petition for allowance of appeal, which our Supreme Court denied on

December 1, 2021. Jones did not seek further review with the United States Supreme Court.

On April 26, 2022, Jones filed the instant timely *pro se* PCRA petition.[3] Jones presented two claims: (1) Trial Counsel provided ineffective assistance of counsel by not giving pretrial notice of Dr. Lage's testimony; and (2) Trial Counsel was ineffective for not challenging the Commonwealth's request for an enhanced sentence on the attempted murder conviction based on an alleged lack of notice.

The PCRA court appointed counsel ("PCRA Counsel") to represent Jones and directed counsel to file an amended petition or no-merit letter. Following receipt of correspondence from PCRA Counsel indicating that Jones wished to proceed *pro se*, the PCRA court conducted a **Grazier**[4] hearing. After determining that Jones knowingly, intelligently, and voluntarily waived his right to counsel, the court permitted PCRA Counsel to withdraw and Jones to proceed *pro se*.

_____

[3] Jones' judgment of sentence became final on March 1, 2022, the last day upon which he could have sought review in the United States Supreme Court. **See** 42 Pa.C.S.A. § 9545(b)(3) (stating that judgment of sentence "becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review"); **see also** U.S.Sup.Ct.R. 13 (providing that petition for writ of *certiorari* must be filed within 90 days of judgment). As Jones filed his PCRA petition within one year of March 1, 2022, the petition was timely. **See** 42 Pa.C.S.A § 9545(b)(1) (providing that petitioner must file petition within one year of date judgment of sentence becomes final).

[4] **See Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

Jones, now *pro se*, filed a motion to compel the production of the medical records of victims Dash and Plunkett. Jones asserted in his motion that the records "could have armed [him] with evidence for or against him" and provided him "with clarity on which decision was in his best interest." Motion to Compel Pretrial and Trial Discovery Medical Records, 12/5/22, at ¶ 4. The PCRA court denied the motion.

Following receipt of the Commonwealth's answer to Jones' PCRA petition, the PCRA court issued notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. The Rule 907 notice indicated, *inter alia*, that Jones' did not offer to prove that the absence of Dr. Lage's testimony prejudiced him or that Dr. Lage would have given different testimony than that of his other expert. **See** Rule 907 Notice, 6/14/23, at 8, 11. Jones did not file a response. On September 11, 2023, the PCRA court entered an order dismissing the petition. Jones filed the instant notice of appeal.[5] Both Jones and the PCRA court have complied with Pa.R.A.P. 1925.

Jones presents the following issues for our review:

_____

[5] Jones filed a notice of appeal *nunc pro tunc* on April 30, 2024, more than six months after the appeal period had run from the September 11, 2023 dismissal order. Jones represented in the notice that he did not receive the dismissal order and attached Department of Corrections correspondence indicating that he did not receive legal mail in September and October 2023. **See** Notice of Appeal *Nunc Pro Tunc*, 4/30/24, at ¶¶ 7-11, Exhibit C. On May 17, 2024, the PCRA court entered an order finding a breakdown in the operations of the court system and accepted the *nunc pro tunc* notice as timely filed from the dismissal order.

[1.] Did [T]rial [C]ounsel render ineffective assistance during trial when she did not follow the procedure to give notice to the Commonwealth in order to have her surrebuttal witness testify?

[2.] Did the [PCRA court] commit an error by denying [Jones] a discovery request because he is representing himself and a protective order prevents him having or reviewing the contents except with a lawyer. Should the [PCRA court] have appointed standby counsel, so [Jones] could develop his claim?

[3.] Did [T]rial [C]ounsel render ineffective assistance by failing to timely object to the Commonwealth's failure to give notice of their intent to enhance the attempt murder sentence?

Jones' Brief at 5 (suggested answers omitted).

We review the denial of PCRA relief to determine whether the record supports the PCRA court's factual determinations and its legal conclusions are free of error. *See Commonwealth v. Ortiz-Pagan*, 322 A.3d 247, 251 (Pa. Super. 2024). When supported by the record, the PCRA court's credibility determinations are binding on this Court. *See id*. However, we review the court's legal conclusions *de novo*. *See id*. We confine our review to the findings of the PCRA court and the evidence of record, which we view in the light most favorable to the Commonwealth, the party who prevailed below. *See id*.

In his first issue, Jones argues that the PCRA court abused its discretion by dismissing, without a hearing, his claim that Trial Counsel was ineffective for not providing notice of Dr. Lage's expert testimony. We review a PCRA court's decision to dismiss a claim without a hearing for an abuse of discretion.

- 8 -

*See Commonwealth v. Walker*, 36 A.3d 1, 17 (Pa .2011). "To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Commonwealth v. Brown*, 196 A.3d 130, 193 (Pa. 2018) (citation omitted).

In assessing a claim of ineffective assistance under the PCRA, we presume that counsel has rendered effective assistance. *See Commonwealth v. Reid*, 259 A.3d 395, 405 (Pa. 2021). To overcome the presumption, the petitioner must show that:

> (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different.

*Id*. (citation and quotation marks omitted). The defendant must satisfy all three prongs of this test to obtain relief under the PCRA. *See id*.

Our Supreme Court has explained the standards for assessing an ineffectiveness claim concerning counsel's failure to present expert testimony:

> To satisfy the arguable merit prong for a claim of ineffectiveness based upon trial counsel's failure to call an expert witness, the petitioner must prove that an expert witness was willing and available to testify on the subject of the testimony at trial, counsel knew or should have known about the witness and the defendant was prejudiced by the absence of the testimony. Prejudice in this respect requires the petitioner to show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case. Therefore, the petitioner's burden

is to show that testimony provided by the uncalled witnesses would have been helpful to the defense.

\* \* \* \*

Trial counsel need not introduce expert testimony on his client's behalf if he is able effectively to cross-examine prosecution witnesses and elicit helpful testimony. Additionally, trial counsel will not be deemed ineffective for failing to call a medical, forensic, or scientific expert merely to critically evaluate expert testimony that was presented by the prosecution. Thus, the question becomes whether or not defense counsel effectively cross-examined the Commonwealth's expert witness.

***Commonwealth v. Williams***, 141 A.3d 440, 460, 464 (Pa. 2016) (citations, quotation marks, and footnote omitted).

Jones argues that Trial Counsel was ineffective for failing to provide the Commonwealth with pre-trial notice of her intent to present Dr. Lage as a surrebuttal expert witness, where Rules 568 and 573 required such notice. Jones asserts that Dr. Lage would have effectively rebutted Dr. O'Brien's incriminating testimony concerning whether marijuana can cause psychosis and the testing methods for synthetic marijuana and other drugs. Jones posits that Dr. Lage, a forensic toxicologist, had greater expertise than Dr. O'Brien, a forensic psychiatrist, on these subjects.

Jones contends that Trial Counsel had no reasonable strategy for her failure to give notice when she intended to call Dr. Lage and only failed to do so because of her misunderstanding of the rules. Jones maintains that Trial Counsel's error prejudiced him, where the presentation of a forensic toxicologist may have led to a different outcome at trial.

The PCRA court concluded that Jones' ineffectiveness claim failed, because Trial Counsel elicited testimony from other witnesses concerning the matters Dr. Lage would have testified about at trial. Regarding the issue of whether marijuana can cause psychosis, the court noted that Dr. Cooke testified extensively on direct and cross-examination that Jones' psychotic disorder did not arise from his marijuana usage. The court additionally observed that Trial Counsel effectively cross-examined Dr. O'Brien concerning synthetic marijuana testing methods. The court found that Jones did not prove that Dr. Lage would have presented testimony that would have changed the outcome of the case.

Based on our review, we conclude that the record supports the PCRA court's factual determinations and legal conclusions, and the PCRA court did not abuse its discretion by dismissing Jones' ineffectiveness claim related to Dr. Lage's testimony without a hearing. **See Ortiz-Pagan**, 322 A.3d at 251; **see also Walker**, 36 A.3d at 17. First, we find that Jones did not raise an issue of genuine fact requiring an evidentiary hearing, where he did not plead the nature of the testimony Dr. Lage would have given at trial or offer to call Dr. Lage at a PCRA hearing. **See Brown**, 196 A.3d at 193; **see also** Pa.R.Crim.P. 902(A)(12), (15) (requiring that PCRA petitioners plead the facts supporting their claims and identify any witness who would testify at a hearing); PCRA Petition, 4/26/22, at 10-11 (identifying only Jones and Trial Counsel as potential witnesses at an evidentiary hearing). Without proof of the specific contents of Dr. Lage's testimony, nor an explanation of how Dr.

- 11 -

Lage would have rebutted Dr. O'Brien's testimony, Jones could not show that the absence of Dr. Lage's testimony was prejudicial to him. *See Williams*, 141 A.3d at 460 (providing that, to show prejudice on an ineffectiveness claim related to failure to call an expert witness, petitioner must demonstrate that the testimony would have been helpful to the defense). The Rule 907 notice apprised Jones of the deficiency of his offer of proof with respect to Dr. Lage, and he did not file a response or seek leave to amend his petition. *See* Rule 907 Notice, 6/14/23, at 8, 11; *see also Commonwealth v. Vo*, 235 A.3d 365, 372 (Pa. Super. 2020) (providing that purpose of Rule 907 notice is to provide petitioner with opportunity to seek leave to amend petition and correct material defects therein).

Furthermore, we concur in the PCRA court's conclusion that Trial Counsel negated any prejudice based on Dr. Lage's absence through her effective questioning of Dr. Cooke and Dr. O'Brien. *See Williams*, 141 A.3d at 464. At trial, Trial Counsel indicated to the trial court that Dr. Lage would have testified on two subjects: (1) whether marijuana causes psychosis; and (2) the testing for synthetic marijuana. *See* N.T., 10/21/19, at 116. Dr. Cooke testified extensively regarding his opinion that marijuana could not have been the cause of Jones' psychotic episode and specifically refuted Dr. O'Brien's opinion to the contrary on sur-rebuttal. *See* N.T., 10/18/19, at 244-46, 265, 300-14, 317-19; N.T., 10/21/19, at 97-98. Trial Counsel elicited testimony from Dr. O'Brien: (1) that Jones denied using any drugs aside from

marijuana; and (2) that Dr. O'Brien could not rule out that Jones' urine test checked for synthetic marijuana. *See* N.T., 10/21/19, at 79-80, 83-85.

Accordingly, we conclude that the PCRA court did not abuse its discretion by not holding a hearing on Jones' first ineffectiveness claim, and the court's dismissal is supported by the record and legally correct. *See Walker*, 36 A.3d at 17; *see also Ortiz-Pagan*, 322 A.3d at 251. No relief is due on Jones' first issue.

In his second issue, Jones challenges the PCRA court's decision to deny his motion to compel discovery of Dash's and Plunkett's medical records. Rule of Criminal Procedure 902(E)(1) states: "Except [in first counseled petitions in death penalty cases], no discovery shall be permitted at any stage of the [PCRA] proceedings, except upon leave of court after a showing of exceptional circumstances." Pa.R.Crim.P. 902(E)(1). "[T]he phrase 'exceptional circumstances' is not defined by either the PCRA statute or the criminal rules of procedure, and it is up to the PCRA court, in its discretion, to determine if exceptional circumstances exist and discovery is warranted." *Commonwealth v. Wharton*, 263 A.3d 561, 572-73 (Pa. 2021). We review the denial of discovery in a PCRA proceeding for an abuse of discretion. *See id.* at 573.

Jones argues that the PCRA court abused its discretion by denying his request for Dash's and Plunkett's medical records where they would show that the victims "did not have multiple gun shot wounds[,] information which the jury never heard." Jones' Brief at 21. Recognizing that the records were

subject to a protective order entered before trial, Jones avers that the PCRA court should have appointed standby counsel who could have reviewed the documents pursuant to the "prophylactic measures" set forth in the protective order. *Id*. at 20.

The PCRA court concluded that the Jones did not demonstrate exceptional measures that justified discovery of the medical records. The court stated that it was clear that Trial Counsel reviewed, considered, and utilized the records at trial, as she stipulated to the testimony of Dash's physician regarding the extent of her injuries. *See* N.T., 10/17/19, at 89-90. The court further observed that the production would have violated the protective order in place at trial.

Based on our review, we discern no basis to disturb the PCRA court's denial of Jones' motion to compel production of the victims' medical records. First, Jones has waived his argument that the PCRA court abused its discretion by not appointing standby counsel. Jones did not request standby counsel in the PCRA court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Furthermore, Jones did not raise this issue in his Rule 1925(b) concise statement. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

Second, we hold the PCRA court did not abuse its discretion in concluding that Jones did not show exceptional circumstances justifying the

production of the medical records. **See** Pa.R.Crim.P. 902(E)(1). Jones did not allege in his motion to compel how the requested medical records would support the claims asserted in his petition or any other claim he intended to pursue under the PCRA. **See Wharton**, 263 A.3d at 573 (holding that PCRA court properly denied discovery where petitioner "did not demonstrate a connection between the material requested and his underlying claim"). Furthermore, Jones did not demonstrate why the concerns which led the trial court to enter a protective order regarding the medical records — namely, his history of witness intimidation — should not also have led to the denial of his request for PCRA discovery. Accordingly, Jones' second issue merits no relief.

In his final issue, Jones argues that the PCRA court erred by dismissing his claim that Trial Counsel was ineffective for not objecting to the Commonwealth's pursuit of a sentence enhancement for attempted murder resulting in serious bodily injury.

Section 1102(c) of the Crimes Code provides:

> **(c) Attempt, solicitation and conspiracy.—**
> Notwithstanding section 1103(1) (relating to sentence of imprisonment for felony), a person who has been convicted of attempt, solicitation or conspiracy to commit murder, murder of an unborn child or murder of a law enforcement officer where serious bodily injury results may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 40 years. Where serious bodily injury does not result, the person may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 20 years.

18 Pa.C.S.A. § 1102(c).

"[W]hen the Commonwealth intends to seek an enhanced sentence for attempted murder resulting in serious bodily injury under Section 1102(c), the Commonwealth must include a citation to the statutory provision as well as its language in the charging documents." ***Commonwealth v. King***, 234 A.3d 549, 562 (Pa. 2020). This Court has held trial counsel is ineffective for not objecting to an interrogatory asking the jury to determine if the victim sustained serious bodily injury in connection with an attempted murder charge, when the Commonwealth did not give prior notice it was pursuing the sentence enhancement. ***See Commonwealth v. Bickerstaff***, 204 A.3d 988, 997-98 (Pa. Super. 2019).

Jones argues that Trial Counsel was ineffective for not contesting the sentence enhancement related to his attempted murder conviction. He claims that it was not until the time of sentencing that the Commonwealth provided notice that it would seek an enhanced forty-year maximum sentence based on the serious bodily injury to Dash. Jones avers that Trial Counsel's inaction prejudiced him as it led to the trial court's imposition of a forty-year maximum sentence for attempted murder, instead of twenty years if there was no finding of serious bodily injury. Jones assert that Trial Counsel could not have had a reasonable basis for failing to object to the Commonwealth's inaction, which only had the result of a longer sentence for her client.

The PCRA court found that Jones' ineffectiveness claim lacked arguable merit, reasoning as follows:

On November 19, 2018, the Commonwealth filed bills of information. Count 8 charged, criminal attempt, first-degree murder, with serious bodily injury as follows:

Count 8: Criminal Attempt
          18901A — felony 1st degree

Did unlawfully and feloniously attempt with intent to commit a specific crime, to wit: FIRST DEGREE MURDER, by doing any act which constituted a substantial step toward the commission of that crime.

18 Pa.C.S. § 1102. Attempt, solicitation, and conspiracy: Serious bodily injury resulted. X

On October 24, 2019, the Commonwealth filed amended bills of information. Count 8, charging attempted murder, serious bodily injury, was not amended. [Jones] was on notice that the Commonwealth was seeking attempted murder with serious bodily injury from the time the first bills of information were filed in this case.

PCRA Court Opinion, 6/28/24, at 13-14.

The PCRA court additionally observed that: (1) the Commonwealth noted its burden to prove Jones' actions resulted in serious bodily injury to Dash, during oral argument on a pretrial motion *in limine* concerning admission of a crime scene photograph; (2) Jones stipulated to Dash's physician's testimony regarding the extent of her injuries; and (3) the verdict sheet contained an interrogatory requiring the jury to assess whether as a result of Jones' attempt to commit murder, serious bodily injury resulted to Dash, and the jury answered in the affirmative to that interrogatory. ***See id***. at 14-15.

Our review confirms the PCRA court's analysis. The attempted murder count in the criminal information stated that the Commonwealth intended to

prove that serious bodily injury resulted from Jones' acts and cited Section 1102(c).  By citing the statute and indicating that the murder attempt resulted in serious bodily injury, the information provided Jones with sufficient notice that the Commonwealth intended to pursue the sentence enhancement.  ***See King***, 234 A.3d at 562.  While the Commonwealth amended the information, it did not amend the attempted murder count.  Therefore, the record supports the PCRA court's conclusion that there was no arguable merit to Jones' ineffectiveness claim concerning the sentence enhancement, and this conclusion is consistent with the law.  ***See Ortiz-Pagan***, 322 A.3d at 251.  Therefore, no relief is due on Jones' final issue.

As we conclude that none of Jones' issues merit relief, we affirm the order dismissing his first PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/25/2025

- 18 -